KING *v.* STATE.

Decided April 9, 1892.

1.  *Homicide—Defense of habitation—Guest.*

    A guest has the same right as his host to resist a violent attempt of another to enter the house for the purpose of assaulting "any person dwelling or being therein."

    See *Brown* v. *State, ante* p. 593.

2.  *Homicide—Defence of habitation—Instruction.*

    Where a homicide was committed while deceased was making an attempt to enter the house where accused was a guest, an instruction that the character of deceased for violence was not to be considered if, at the time he was killed, he was making no effort to assault the accused, was erroneous in leaving out of view the latter's right to repel an assault upon the house.

3.  *Evidence—Threats.*

    Where it is a material question whether a homicide was committed while deceased was making an attempt to enter a house for the purpose of assaulting a person therein, not the defendant, evidence is admissible that deceased had frequently threatened to take the life of such person.

4.  *Evidence—*Post mortem *examination.*

    While the fact that a *post mortem* examination was made after the prosecution has been commenced and without notice to the accused may affect the weight of the evidence thus obtained, it does not render it incompetent.

APPEAL from *Pope* Circuit Court.

H. S. CARTER, Special Judge.

The appellant *pro se.*

1.   The testimony of Mrs. Ratliff and Frank Pyle as to threats was admissible.   26 Am. Rep., 52; 57 Ind., 80.

2.   It was error to permit Dr. Ruff to testify as to the exhuming of the body, without notice to appellant or his counsel.   Whart., Cr. Ev., secs. 421, 423.

3.   The court erred in refusing defendant's instruction No. 1.   52 Ark., 45; 49 *id.*, 543, *et seq.*

4.   The fifth paragraph of the court's charge is error.

*W. E. Atkinson*, Attorney General, and *Charles T. Coleman*, for appellee.

Review the instructions asked and refused, citing 49 Ark.,

547; 1 Hale, P. C., 487; Cro. Car., 544; Mansf. Dig., 566;
2 S. W. Rep., 908.

MANSFIELD, J.　The appellant, King, was jointly indicted
with Tom Brown for the murder of J. N. Jones.　On a sep-
arate trial he was convicted of murder in the second degree
and has appealed.　The circumstances of the homicide are
fully stated in the case of *Brown* v. *State*, decided at the
present term.　The theory of Brown's defense was that
Jones was killed while endeavoring in a violent manner to
enter the dwelling house of Mrs. Ratliff for the purpose of
assaulting him with a deadly weapon.　He and King both
shot the deceased from within the house and at the same
moment.　In this case, as in Brown's, it was proved that the
reputation of the deceased was that of a revengeful and.
dangerous man.　And several witnesses testified that when.
he was killed he was within a few feet of the door of the
house and was advancing towards it with an axe drawn in a.
threatening manner.

　　The house consisted of a single room, and this could only
be entered through the door in front of which the body
of Jones was found immediately after the shooting.　There-
was testimony to show that King and Brown were the
guests of Mrs. Ratliff on the day of the killing.　A few days
previous to that time an angry controversy had occurred be-
between King and Jones; and from statements made by
King as a witness in his own behalf it would seem that he
was apprehensive that Jones would attack him.　And the-
instructions to the jury which he requested the court to give
indicate that he sought to justify his participation in the hom-
icide as well on the ground of self-defense as that in shooting
the deceased he was resisting an assault upon Mrs. Ratliff's
house.

　　Where a violent attempt to enter a dwelling house is re-
sisted as a means of self-defense and the aggressor is slain,
the ground on which the homicide may be justified, accord-
ing to our view of the law, is stated in Brown's case and

*1. Right of guest to defend. the habitation.*

need not be repeated here. King's first instruction appears to have been requested with the view of presenting to the jury the theory that his act in shooting the deceased was a measure necessary to his personal safety. It does not meet all the requirements of the law; but so much of it as told the jury that the law did not require King to abandon the protection which the house afforded or to expose himself to increased danger by attempting to leave it was proper.

As the guest of Mrs. Ratliff, King could lawfully resist a violent attempt by Jones to enter her house for the purpose of assaulting "any person dwelling or being therein." Mansf. Dig., sec. 1551; *Brown* v. *State, ante* p. 593; *Wright* v. *Commonwealth*, 2 S. W. Rep, 908. In defending the house when thus assailed it was his duty to avoid a resort to fatal means if he could do so without exposing himself to the danger of losing his life or of receiving great bodily injury. But he could rightfully employ such force as reasonably appeared to him necessary to repel the assault. And whether he was justified in shooting Jones to prevent the entry of the latter into the house was a question which it was his right to have submitted to the jury upon a correct charge as to both of the theories on which he relied for an acquittal. As applicable to a defense under section 1551 of the digest, his second instruction was substantially correct to the extent that it goes. It was not sufficiently full and contained some verbal inaccuracies. But the court should have relieved it of these defects and embraced it in the charge to the jury.

As the appellant did not rest his cause solely on the ground that he shot the deceased in self-defense, the second clause of the court's third instruction was not correct, for the reason that it excluded from the jury's consideration the question whether the homicide was justifiable on the ground that it was done in defense of the house.

2. Instruction as to deceased's character considered.     By the last clause of the fifth instruction, the jury were told that the testimony as to the character of the deceased for violence was not to be considered if they found that, at the time he was killed, he was making no effort to assault

King. This instruction, like the third, erroneoüsly leaves out of view the right of King to repel an assault upon the house.

As it was lawful for King to resist by proper means a violent attempt by Jones to enter the house of Mrs. Ratliff for the purpose of assaulting Brown, any evidence was admissible which went to show that such an attempt was made. As tending to prove that fact, the testimony of Pyle and Mrs. Ratliff that Jones had frequently threatened to take the life of Brown was competent, and it was error to exclude it. *Brown* v. *State, ante,* p. 593, and authorities cited. 3. When evidence of threats admissible.

About ten days after the homicide, and after the arrest of the defendant, the body of the deceased was exhumed and examined by Dr. Ruff as a medical expert by request of the attorney for the State, and without notice to the defendant or his attorney. The evidence of Dr. Ruff giving the result of this examination was objected to by the defendant. A *post mortem* examination made after a prosecution has been commenced and without notice to the accused rests under a suspicion of unfairness. But while the fact that the examination was made *ex parte* may affect the weight of the evidence thus obtained, it does not render it incompetent. Wharton, Crim. Ev., secs. 421, 422. 4. Evidence of *post mortem* examination.

For the errors indicated the judgment is reversed and the cause remanded for a new trial.