Rogers v. State.

Opinion delivered February 13, 1922.

1. HOMICIDE—ASSAULT WITH INTENT TO KILL—EVIDENCE.—In a prosecution for assault with intent to kill, growing out of a dispute as to the right to use a meadow, the testimony of defendant's father who owned the meadow that a few days before the alleged assault he had been assaulted by the prosecuting witness with a knife because he had told defendant not to use the meadow, and that he had told defendant of such assault, was competent as tending to show the state of mind between defendant and the prosecuting witness and to show who was the aggressor.

2. HOMICIDE—ASSAULT WITH INTENT TO KILL—SPECIFIC INTENT.—In a prosecution for assault with intent to kill, the assault must be shown to have been made with a specific intent to take life.

3. CRIMINAL LAW—FAILURE TO GIVE INSTRUCTION—REQUEST.—In a prosecution for assault with intent to kill, defendant cannot complain of failure to give an instruction as to the specific intent to kill being necessary, in the absence of a request therefor.

4. CRIMINAL LAW—FAILURE TO GIVE INSTRUCTION—NECESSITY OF REQUEST.—In a prosecution for assault with intent to kill, defendant cannot complain of the court's failure to define the lesser grades of assault, in the absence of a request for such an instruction.

5. HOMICIDE—ASSAULT WITH INTENT TO KILL—SUFFICIENCY OF INDICTMENT.—In a prosecution for assault with intent to kill, an indictment alleging that defendant committed an assault "with a deadly weapon, to wit, a pistol," *held* sufficient, as against objection that the manner in which the pistol was used should have been alleged.

Appeal from Benton Circuit Court; *W. A. Dickson,* Judge; reversed.

*Walker & Walker* and *Duty & Duty,* for appellant.

Before a conviction for assault with intent to kill can be sustained, the evidence must show beyond a reasonable doubt that the defendant would have been guilty of either murder in the first or second degree, had death ensued from the assault. 47 Ark. 275; 120 Ark. 494; 125 Ark. 542; 72 Ark. 569.

The burden was upon the State, which it has failed to discharge, of proving a specific intent to kill. 96 Ark. 55; 49 Ark. 156; 54 Ark. 283; 54 Ark. 336 and 489; 94 Ark. 69. Neither has the State proved the other necessary element of malice to sustain the charge. 8 Ark. 451; 10 Ark. 318; 34 Ark. 275; 54 Ark. 335; 72 Ark. 569; 82 Ark. 64.

The court erred in refusing to admit the testimony of D. P. Rogers as to the threats and hostile demonstration toward him by the prosecuting witness, which facts were communicated to the appellant. These acts were part of the *res gestae* and tended to throw light on the state of feeling existing on the part of Elkins. 135 Ark. 388; 130 Ark. 101; 82 Ark. 595; 55 Ark. 593; 59 Ark. 148; 72 Ark. 436; 29 Ark. 248; 79 Ark. 594; 76 Ark. 495.

Instruction No. 4 correctly stated the law applicable to malice and intent, which are essential ingredients of the offense, and should have been given. 115 Ark. 566; 54 Ark. 283; 34 Ark. 275.

Instruction 9 on the question of reasonable doubt as to the grade of the offense was not covered by any instruction given, and it was error to refuse it. 13 Ark. 712; 114 Ark. 201.

The indictment was defective in that it failed to allege the manner in which the assault was committed. 26 Ark. 323; 27 Ark. 493; 29 Ark. 165; 102 Ark. 595; 34 Ark. 263.

The court erred in not instructing the jury on manslaughter. 91 Ark. 570; 162 U. S. 466; 162 U. S. 313.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

There was abundant evidence of the intent to kill on the part of appellant, and the jury so found, and its verdict will not be disturbed on appeal. 135 Ark. 117; 136 Ark. 385.

Appellant is not in position to complain of the exclusion of the evidence of the father of appellant, as he failed to show what the testimony would have been. 88 Ark. 562; 87 Ark. 123; 133 Ark. 599. The difficulty about which the elder Rogers sought to testify was too remote to be a part of the *res gestae.* 107 Ark. 87.

It was not error to refuse appellant's instructions No. 4 and 9, as they were covered by others given. 101 Ark. 120.

An indictment for assault with intent to kill need not state the means made use of by the assailant to effect his intent, as in homicide cases. 34 Ark. 275; 13 R. C. L. 804.

Appellant did not request any instruction on manslaughter, and cannot now complain. 95 Ark. 593; 101 Ark. 513; 102 Ark. 588; 110 Ark. 567; 137 Ark. 530.

SMITH, J. Appellant was convicted of assault with intent to kill upon his trial under an indictment which, omitting the formal parts, reads as follows: "The said Earle Rogers in the county of Benton and State of Arkansas on the 11th day of November, 1921, feloniously, wilfully and with malice aforethought did commit an assault on one Alfred Elkins with a deadly weapon, to-wit, a pistol, with the felonious intent then and there to kill and murder him the said Alfred Elkins, no considerable provocation for said assault then and there appearing and the circumstances thereof showing an abandoned and malignant disposition on the part of him the said Earle Rogers, against the peace and dignity of the State of Arkansas." Appellant and Elkins had married two sisters, and both lived on a farm owned by appellant's

father, of which appellant had possession under a contract to give his father a third of the crops grown on the place. Elkins was a sub-tenant of appellant, and had possession of a part of the farm under a written contract, which was offered in evidence, but does not appear to have been copied into the bill of exceptions. There was a meadow of about fifteen acres on the farm which Elkins claimed the right to use in common with appellant. This right appellant denied, and he testified that Elkins' right of pasturage was limited under the contract to a part of the meadow, about three acres in extent, which had been separately fenced and set apart to Elkins.

Appellant took the contract to a justice of the peace of the township, and was advised by him that the contract gave Elkins no right to use the part of the meadow not assigned to Elkins.

Elkins persisted in using the entire meadow, and a bitter feeling sprung up between him and appellant on that account. Appellant turned Elkins' cattle out of the meadow on three occasions, and each time Elkins put them back in the meadow.

Appellant's father was called as a witness, and was asked to tell, in his own way, what the trouble was between his son and Elkins, but the prosecuting attorney objected and assigned the following objection: "I can see the purpose of that—trying to get in that knife deal again, and I object." The court ruled that the witness might testify as to any previous trouble between appellant and Elkins. The witness then proceeded to state that on Monday, before the shooting occurred on the following Thursday, he saw Elkins, and told him he had no right to put his cattle in the meadow, and not to do so, and that Elkins called him a liar and went for his knife. The prosecuting attorney objected that "this witness has insisted on making that statement about the knife. I asked the court to tell the jury it is not competent evidence and not to consider it, after the court has

sustained an objection three or four different times."
The court ruled: "Just strike that out, Mr. Stenographer,
and also the jury will eliminate that from their considera-
tion of the case." Thereupon counsel for appellant said:
"The defendant insists that the testimony is competent,
and will be followed up by showing that the acts and
conduct of the prosecuting witness at that time were
communicated to the defendant, and goes to show the
state of mind of the parties at the time of the difficulty
and who was the aggressor, and the defendant excepts
to the ruling of the court in refusing to permit said testi-
mony." An objection to this question was sustained and
exceptions saved, whereupon counsel for appellant asked
the following question: "Now, Mr. Rogers, I want to ask
you this question, and don't answer it until Mr. Nance
objects. I will ask you if on that occasion when you stated
that Elkins went after his knife and called you a liar,
if you immediately communicated that fact to your son?"
The prosecuting attorney objected to this question upon
two grounds, first, that the question was immaterial, and,
second, an objection had been sustained to it. In ruling
upon this objection the court said: "I will just sustain
another objection."

The testimony as to what happened at the time of
the shooting can not be reconciled. According to the
testimony on behalf of the State, the appellant was told
by his mother that Elkins' cattle were again in the
meadow, whereupon appellant armed himself with a
pistol and went at once to the meadow, where he met
Elkins and assaulted him without provocation, first strik-
ing him with his fist, then the pistol, and thereafter firing
twice at him, one of the shots taking effect in Elkins' leg.
According to appellant, he went to the meadow for the
purpose only of again turning the cattle out. It had
been communicated to him that Elkins had said he would
"beat the ears down" of the appellant or any one he
found turning his cattle out of the meadow, and that he
armed himself for protection in the event only that he

was assaulted, and that he was assaulted by Elkins, who knocked his hat off with the pistol and struck him in the face with his fist, whereupon he shot Elkins through the leg.

In this view of the testimony, it is insisted that it was error for the court to refuse to allow appellant's father to testify that Elkins assaulted him with a knife when he went, as the representative of his son, to remonstrate with Elkins about turning his cattle in the meadow.

In response to this contention, it is first said that appellant did not complete his record by showing what the elder Rogers would have testified had he been permitted to do so. But this is not true in view of the recitals of the record set out above. The witness stated that he was called a liar, and that Elkins "went for his knife," and the special objection of the prosecuting attorney to the question being asked the witness was that the defense was trying to prove that the witness had been assaulted by Elkins with a knife. Another objection made by the prosecuting attorney to the question in regard to the difficulty between the elder Rogers and Elkins was that bad reputation was being proved by a specific act.

We think the testimony by the elder Rogers was competent, and that error was committed in excluding it. It was not an attempt to prove reputation. On the contrary, it tended to show the state of mind beween Elkins and appellant and had probative value in determining who was the aggressor. Appellant had undertaken to prove that Elkins had said he would "beat down the ears" of any one who undertook to turn his cattle out of the meadow, and had assaulted appellant's father for denying that he (Elkins) had the right to use the pasture. Appellant testified that when he turned the cattle out of the meadow he did not know Elkins was near, and that Elkins came running to where he was and assaulted him, and that Elkins had an object in his hand which he thought was a knife. As we have said, there was the

sharpest conflict in the testimony just here, and the excluded testimony of the elder Rogers would have tended to show the purpose on the part of Elkins to assert and maintain, with force, his right to use the meadow against any one who questioned that right. If Elkins made such threats, or had such purpose, proof thereof would have had probative value in determining who the aggressor was when the fight occurred, and also in determining whether appellant had reason to believe he was in imminent danger of receiving great bodily harm when Elkins came running up to him, as the jury might have found that Elkins' threat of violence against the elder Rogers was in effect a threat against any one who sought to deprive him of the right to use the meadow. *Blackburn* v *State,* 135 Ark. 388; *Cranford* v. *State,* 130 Ark. 101; *Burton* v. *State,* 82 Ark. 595.

It is insisted that the court erred in failing to instruct the jury that the offense of assault with intent to kill is not committed unless there is shown a specific intent to take life. Such is the law; but, if the instructions are open to this objection, then it may be said that appellant cannot be heard to complain, for the reason that he did not ask an instruction to that effect.

The same answer may be made to the objection that the court did not define the lesser grades of assault embraced in the indictment.

Numerous other assignments of error are argued; but we do not think they require discussion by us except that the objection to the sufficiency of the indictment is not well taken. The objection is that the testimony shows the pistol was used as a bludgeon, and was also used as a pistol by shooting it, and the indictment should therefore have alleged the manner in which the pistol was used in the attempt to kill. The answer to this insistence is that the indictment does not charge the crime of murder, but only an attempt to commit that crime, and in the case of *Lacefield* v: *State,* 34 Ark. 275, the court said: "The rule is well settled that in an indictment for an assault with

intent to commit an offense, the same particularity is not necessary as is required in an indictment for the actual commission of the offense; and an indictment for an assault with intent to murder need not state the means made use of by the assailant to effect his murderous intent. They are matters of evidence to the jury." (Citing cases). *State* v. *DeLong,* 89 Ark. 391.

For the error in refusing to permit appellant's father to testify as to Elkins' conduct and threats when he spoke to Elkins about the use of the meadow, the judgment will be reversed and the cause remanded for a new trial.