PHILLIPS *v.* TURNEY.

4-5491                                          129 S. W. 2d 963

Opinion delivered May 22, 1939.

*Christy & Henley* and *W. F. Reeves,* for appellant.

*Opie Rogers, Wm. T. Mills* and *William T. Mills, Jr.,* for appellee.

BAKER, J. The appellants, Velona Phillips, as widow, and as next friend to Clifford, Venita, Eual,

Hubert and Quindora Phillips, minors, and Carrie Phillips, of lawful age, the children and heirs at law of Carl Phillips, deceased, sued Coy Turney for damages, alleging that they were wholly dependent upon the said Carl Phillips for support and that he contributed to them the proceeds of his labor; that Carrie Phillips, although an adult at the time her father was killed, was going to school at his expense and was dependent upon him and had his promise for assistance to obtain an education; that by reason of his death she had to quit school. The usual allegations of the deprivation of companionship, protection, support, aid, assistance and parental care were alleged.

They also alleged that on the 15th day of May, 1938, Coy Turney willfully, deliberately, wrongfully and without cause shot and killed the said Carl Phillips.

Defendant filed an answer and denied specifically the allegations of the complaint and pleaded that on the 15th day of May, 1938, the defendant was at his home, in or near the town of Snowball, Arkansas; that at about 8:00 o'clock p. m. he went to his barn, fed his mules and at that time he saw Carl Phillips "slipping" into his field and proceeding toward his house, that he had not spoken to Carl Phillips for about eight years; that he had had trouble with him at that time; that the said Carl Phillips was attempting or had been trying to pay attention to his wife; that when he saw that Carl Phillips was coming toward his home and that he was laboring under a belief that if Carl Phillips appeared at his home it would be for the purpose of killing or hurting him, or to assault his wife; that he armed himself with a shotgun and left his house and remained inside the yard or its enclosure and that Carl Phillips came close or near to him, within possibly twenty-five yards, and that he called to the said Carl Phillips who "made a pass like he had a gun with him," and that the defendant fired with his gun.

On account of the fact that a detailed statement of this case, in all its particulars, would necessarily prove embarrassing to certain persons, particularly children, without any consequent good to follow therefrom, we shall content ourselves with the barest possible statement of

the conditions stated favorably to support the judgment in favor of the appellee. *Alexander* v. *Johnson*, 182 Ark. 270, 31 S. W. 2d 304.

Phillips and Turney had been enemies for a period of years, stated as seven or eight years. Their troubles at that time culminated in Turney shooting Phillips twice. Apparently the troubles between the two were settled and Phillips moved out of the community. Possibly within a year before this last matter arose in which Phillips was killed, Phillips had moved back within three hundred yards of the place where Turney was living. The two frequently met or passed each other without speaking or having any kind of communication. Turney says that he was advised that Phillips was carrying a pistol, had made some threats, perhaps somewhat veiled in their nature. His evidence evinces the fact that during these years he had lived under the belief that the trouble might again be renewed by Phillips and that he had kept shot-gun shells with one of which he killed Phillips. On the night of the killing he had gone to his barn and fed his mules a short time before it was really dark, though night was coming on, and while he was engaged in these chores about his place, he observed Phillips inside his field, "slipping" toward his barn. He finished his work at the barn and returned to his house, and he states that he thinks he had washed his hands and eaten supper when he went out in the yard, taking his gun with him. He wanted to know if Phillips was coming to make an attack upon him or his home; that he saw Phillips coming rapidly along the fence and close to the fence toward his house; that the pathway that Phillips followed was one that went only from the barn to the house and depending upon the direction traveled the destination of one using this path was determined. He is not sure, but he thought that Phillips had climbed the fence to the yard; that when he called to Phillips, Phillips made a motion as if to draw a pistol when defendant shot him. When Phillips body was later examined no pistol was found upon his person or near his body, but it is argued that one of his sons, practically grown, was the first person

to him. There was found, however, within six or seven feet of the deceased's body, brass knucks.

One of the arguments made upon this appeal, from the judgment rendered in favor of Turney upon this suit for damages, is that the evidence and reasonable inferences from it do not justify the conclusion reached by the jury. We think otherwise. There were two men engaged in a fued so bitter that one had shot the other seven or eight years ago. During all the interval since that time there was some form of truce, but no assurance of peace. We do not think that the evidence warrants a conclusion that Turney was unnecessarily frightened or afraid of further violence, but the conduct of Phillips was such that Turney was justified in his fears that there might be at some time a recurrence of the old troubles. Neither one of these men apparently talked very much to their friends or neighbors and this is perhaps one indication that each understood that any new or second embroilment as between them would end only in the death of one or the other. There is not one iota of proof or suggestion that Turney did anything to carry on this fued or that his conduct was such as to aggravate or bring about any new outbreak as between the two. He seems to have ignored Phillips, lived quietly in his home, though perhaps ready at all times to protect himself should an attack be made upon him. We think we are justified in considering what his feelings must have been when he observed Phillips climbing into his field and secretly and furtively attempt to reach his barn where Turney was at the time feeding his mules, just before dark, on the fatal day. Turney did not wait in the barn for Phillips, but, having finished his feeding, went immediately to his house and remained inside for a time. It is easy to argue that it might have been better had he stayed inside the house with his family, but we seriously doubt if that were the better part of discretion, if he expected an attack, fatal in its nature, to be made upon him by Phillips. Since he had retreated to his home, the last stronghold of protection left to him by nature and the law of the land, he must have felt justified when he went back into his yard in taking his gun in order that

he might be ready, if some attack were made under cover of darkness which had then ensued. Pope's Digest § 2998. His testimony is that when he returned to his yard he saw Phillips in the hall way of his barn peering out as if looking for someone. No doubt he was expecting to see Turney return to the barn or doing chores about the house, as he perhaps did not know that he had been discovered as he went "slipping into the barn."

Appellants do not face the true issue upon this proposition and say that perhaps when Phillips left the barn "he had evidently started to go to town." Phillips was upon the pathway that led from the barn to the house, going toward the house of Turney, after he had been secreted in the barn for a time as on the lookout for Turney. Whether he was armed with pistol or gun upon that occasion makes no difference now. If Turney honestly thought he was armed, and we really think he was justified in so doing, under the facts and circumstances, he was justified in acting upon that presumption. When Phillips approached the place where Turney was then standing, walking in a rapid manner, Turney fired the fatal shot. At least, the facts that were disclosed by this record were sufficient and of substantial nature to warrant the jury in finding that Turney believed Phillips was seeking him out. It is inconceivable under the circumstances that Turney could have surmised the visit was a friendly one. We entertain no such view. *Sullivan v. State,* 171 Ark. 768, 286 S. W. 939. This was, also, held to be a jury question. Many authorities are available, but the above one is typical.

It is argued that because of the fact that Turney had kept the shotgun and loaded shells for several years, this was evidence of his long continued ill feeling and malicious conduct. But the jury may have found it was also evidence of his patient and long suffering without active resentment, or, even of a law abiding disposition and nature. If these facts were properly submitted to the jury its verdict is conclusive. We, therefore, consider the method of submission. In doing so we discuss only the instructions to which objections were made.

Appellants argue that the court erred in giving three instructions at the request of the defendant. These instructions were No. 3, No. 4, and No. 6.

Instruction No. 3 is as follows: "I instruct you that in case of a wilful tort the wrongdoer is responsible for the direct and proximate consequences of his act without regard to his intention to produce the particular injury. And in this case if you find that Carl Phillips was in the act of committing a tort or wrong and that the act of so committing said tort or wrong was the proximate cause of his injury and death, if any, you should find for the defendant, Coy Turney."

Instruction No. 4 is as follows: "You are instructed that before you can find for the plaintiff and against the defendant, Coy Turney, you must find from the evidence and by a greater weight thereof, that Coy Turney was negligent and had no right to kill Carl Phillips, and that Carl Phillips did not contribute to said killing either by any action of his or by any omission of his, and unless you so find you should find for the defendant, Coy Turney."

Instruction No. 6 is as follows: "I instruct you that if you find from the testimony in this case and by the greater weight thereof, that the deceased Carl Phillips, at the time of the shooting, which mortally wounded him, was engaged in the commission of an unlawful act and that the shooting and killing was caused by said unlawful act on the part of the deceased, Carl Phillips, and was necessary, then you should find for the defendant, Coy Turney."

The only objection made to instruction No. 3 is a general objection. It was perhaps ineptly drawn and might have been better expressed in different language, but the form or method of expression was not objected to and unless the instruction was in itself inherently wrong, appellant's objection cannot be sustained. *Alexander v. Johnson, supra; Mississippi River Fuel Corp. v. Senn,* 184 Ark. 554, 43 S. W. 2d 255.

In this case we cannot see how it may reasonably be argued that Phillips had any right upon appellee's

property. There was no excuse for him to be present upon the premises of Turney according to the facts disclosed, except to commit some wrong upon the person of Turney or those of his household. There is no evidence of any kind that justifies any conclusion except that Phillips was there for the purpose of making an assault upon Turney or some member of his family. If such was his intention, and his intention may be interpreted only from his conduct, since he is now dead, and no explanation may be made except from his conduct, then his conduct, under all the facts and circumstances above stated, justified every act that might be employed in the necessary self-defense and defense of the home, and such is the effect of instruction No. 3, when rightly considered and interpreted as related to the facts in the record.

In instruction No. 4 the court told the jury that before it could find for the plaintiff against the defendant, Coy Turney, it must find from the evidence and by the greater weight thereof, that Coy Turney was negligent and had no right to kill Carl Phillips and that Carl Phillips did not contribute to the said killing by any action of his or by any omission of his. The objection made to this instruction is a general objection and not specific as to any method employed in its statement. While we think the instruction might well have been omitted in that there was no specific act of negligence that might properly have been argued as against Turney, yet we do not see how there could be any prejudice in basing the instruction upon such a condition. It is true that one acting in self-defense may not act negligently, but such conduct as may be treated as negligence in homicide cases is not the willful disregard for the rights of others, but perhaps more in the nature of violating the rights of others by reason of a failure to consider that the second party may have any rights at all under the circumstances. There may have been such a theory in the oral presentation of the case that Turney shot too soon and before his danger was so eminent and perilous as to make the shooting absolutely necessary for his own self-defense. If such was the theory upon which this instruction was founded, then necessarily we think before plain-

tiffs could recover, the facts presented must have justified the jury so to determine the facts in their favor. This certainly was not a proposition of law, but it was a question of fact for the jury. We do not think this statement impairs in the least the well known and long established doctrine that one who kills another must assume the burden of establishing the fact that the killing was in the necessary defense of his person or of those entitled to his protection. Pope's Digest, § 2968. It was Turney who had to meet this additional burden of showing himself not to have been negligent. The court did not by this instruction impose the burden upon plaintiffs to disprove that defendant had acted in self-defense. The court had properly instructed the jury under the provisions of § 2968 aforesaid. Although this instruction might have been challenged properly by specific objections to its method of expression, such objections were not made. It was not inherently wrong or prejudicial as applied to all the facts developed.

In regard to instruction No. 6, the same statement may be made as has been made in regard to the others, that the objection is general. We think the purport of the instruction is correct; that is to say that it is not inherently erroneous. Carefully analyzed, it is subject to criticism. In this instruction, the court told the jury that if they found from the preponderance of the evidence that at the time of the shooting Phillips was engaged in the commission of an unlawful act and the shooting and killing was caused by said unlawful act and that it was necessary, they should find for the defendant. Of course, it is true that the commission of unlawful acts does not always justify killing and such killing may be murder, but this instruction related to the specific acts in evidence before the jury. The instruction is also susceptible of the criticism on account of the manner in which it is stated, that it makes the unlawful act of which Phillips may have been guilty the proximate cause of his death. We think it is only another way of permitting the jury to determine if the particular unlawful acts or conduct of Phillips as presented in evidence may have justified Turney in shooting him. Since we believe this is the only

interpretation under the facts and circumstances that might have reasonably been given to this instruction by the jury, we do not believe it was prejudicial or erroneous.

These were all the matters urged for a reversal of the verdict of the jury in this case. They are not sufficient.

Affirmed.

GRIFFIN SMITH, C. J., SMITH and MEHAFFY, JJ., dissent.