Dewey BROCKWELL *v.* STATE of Arkansas

CR 76-32                                        545 S.W. 2d 60

Opinion delivered December 20, 1976
(In Banc)

*John F. Gibson Jr.,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Jackson Jones,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant was convicted of second degree murder for the killing of his son-in-law, Walter Griffin, by shooting him with a 12 gauge shotgun loaded with buckshot. Brockwell and his wife lived next door to their daughter and son-in-law at McGehee. The killing took place as Griffin approached the front door of the Brockwell house, where his wife, Goldie Griffin, had gone with her mother on the preceding day. Goldie Griffin was ill at the time and died before the trial. Appellant's defense was that he acted in defense of his habitation. He urges 20 points for reversal, most of which merit little discussion. We do find reversible error in the court's failure to sustain appellant's objection to the prosecuting attorney's cross-examination of him.

Appellant had testified that his daughter was ill and had been released from the hospital just a few days earlier and had first come to the Brockwell house, but had gone to the Griffin house just two days prior to the day of the killing. On the evening of that same day, according to Brockwell, his wife had brought their daughter back to the Brockwell house and Griffin had followed them at a distance of about two and one-half feet, cursing and raging. Brockwell said he had latched the storm door at the front of the Brockwell house after his wife and daughter entered and Griffin had threatened to tear

it down and come into the house. Brockwell stated that when he closed and latched the main door, Griffin left and Mrs. Brockwell called the police. Brockwell said that he watched and saw that Griffin had turned out all the lights in the Griffin house. Brockwell told of the steps taken by him and his daughter to institute "peace bond" proceedings against Griffin the following day. On still the next day he stated that Griffin returned home from work, sent for his wife, and, when she didn't come, came out and said that if she were not back home in 15 minutes, he would come back, tear the door down and get her. Then, Brockwell said, Griffin left, after having upbraided his wife on the telephone for having taken his gun, telling her he could get another. He stated that Griffin promptly got in his car and "took off," spinning his wheels, but returned in about one and one-half hours and sat on his front steps drinking beer, after which the five-year-old son of the Griffins came into the Brockwell house and reported that his daddy had said that, if he came back to the Brockwell house, "it would be rough." Brockwell said that Griffin sat on his own porch for about 15 minutes and then started toward the Brockwell house.

Brockwell testified that he thought Griffin had a gun, but could see only his shirt, not his hands. He said that the shirt hung down pretty long. On cross-examination, Brockwell testified that Griffin's shirttail was out as he approached the Brockwell house. Then the prosecuting attorney showed a photograph to the witness, prompting an objection that the picture had not been introduced in evidence. The prosecuting attorney showed a photograph to the witness, prompting an objection that the picture had not been introduced in evidence. The prosecuting attorney responded that the photograph was offered for the purpose of impeaching the testimony of the witness, because it clearly showed that "the man's shirttail was in." The trial judge permitted the prosecuting attorney to question the witness about the picture without its being shown to the jury. The witness protested that the picture had been taken after the shooting but that he had been unable to see Griffin's hands prior to the shooting. The prosecuting attorney asked if the witness assumed that Griffin tucked his shirt in after the killing. When appellant's attorney objected to any statement by the prosecution that Griffin's shirt was tucked in after the shooting, the prosecuting attorney answered that the witness

had testified that the shirttail was out and that if the defendant wanted to introduce the picture, he could do so, and the trial judge stated: "I'm going to now — This witness testified that his shirttail was hanging out." The picture was never introduced in evidence, even though the prosecuting attorney had said that it would be if Brockwell could identify it. There was no indication other than the statement of the prosecuting attorney, what it depicted relative to the shooting or when it was taken.

This attempt to impeach the defendant related to a very critical issue in the case. Admissibility of the photograph in evidence depended upon the laying of a foundation showing that it was a fairly accurate representation of the conditions existing at the time in question. *Riggan* v. *Langley,* 238 Ark. 649, 383 S.W. 661; *Wheeler* v. *Delco Ben & Broadway Ice Co.,* 237 Ark. 55, 371 S.W. 2d 130. In this case, the picture would not have been admissible, unless it was indicated, in some manner, other than the prosecuting attorney's statement, that it showed Griffin's clothing was arranged substantially as it had been when the shooting occurred, or unless the difference was properly explained. *Powell Bros. Truck Lines* v. *Barnett,* 196 Ark. 1082, 121 S.W. 2d 116. The prosecuting attorney's statement about what the picture portrayed was not evidence and was patently improper.

Appellant's objection should have been sustained. The statement that appellant could introduce it if he wished certainly did not cure the error, or erase the manifestly prejudicial effect of the prosecuting attorney's statements or the trial court's failure to sustain the objections. It was not appellant's responsibility to lay the foundation for the introduction of the picture; and he should not have been called upon to rebut statements of the prosecuting attorney that are not supported by evidence. It should be noted that the picture was never introduced or offered for identification and, in effect, the witness was impeached on a critical point by the unsupported statement of the prosecuting attorney. Even though leading questions are permissible on cross-examination, an attorney cannot be permitted to make statements of fact in the guise of cross-examination. *Nelson* v. *State,* 257 Ark. 1, 513 S.W. 2d 496.

Although we find no reversible error on other points,

there are matters that will arise on a retrial that we must treat in order to avoid potential reversible error on other points. Even though we consider the record deficient on two points for want of a proper proffer of proof, there are indications that such a proffer would have demonstrated that the trial court erred in excluding testimony about statements made to appellant by his daughter prior to the shooting relating to a telephone conversation between her and her husband and about previous actions and statements of the victim.

Appellant's wife, Marie Brockwell, told of caring for her daughter after she was released from the hospital and said that she had gone to her daughter's house the first night the latter was at her own home and had found her having trouble with her heart and her husband bathing her face and cursing loudly. Mrs. Brockwell testified that she invited her daughter to come to the Brockwell house. Objections to her stating that Griffin grabbed Goldie when she started to arise from her bed were sustained. When asked if she had run into any obstruction in helping her out of the house, an objection to the question was sustained before any answer was given, with the court ruling that the testimony was not admissible because appellant was not present. Subsequently, Mrs. Brockwell testified that her daughter had later talked on the telephone with Griffin. When Mrs. Brockwell was asked what her daughter had repeated to her and whether Brockwell was present at the time, objections were sustained. Appellant's attorney then objected to the court's ruling, arguing that the statement made by Goldie Griffin to her father was admissible to show what she told him and relevant to the determination whether it was sufficient to excite fear of Griffin. Appellant also now suggests that Mrs. Brockwell should have been permitted to testify as to facts she had communicated to her husband which tended to show that Brockwell was acting with reasonable apprehension of danger at the time of the shooting.

A homicide in defense of one's habitation is justifiable. Ark. Stat. Ann. § 41-2231 (Repl. 1964). His house or place of residence is, in law, his castle. Ark. Stat. Ann. § 41-2233 (Repl. 1964). A manifest attempt and endeavor, in a violent, riotous or tumultous manner to enter the habitation of another for the purpose of assaulting or offering personal violence to any person dwelling or being therein, is a justifica-

tion of homicide. Ark. Stat. Ann. § 41-2234 (Repl. 1964). To justify a killing, it must appear that the circumstances were sufficient to excite the fears of a reasonable person and that the killer really acted under their influence and not in a spirit of revenge. Ark. Stat. Ann. § 41-2235 (Repl. 1964). The burden of proving justification devolves upon the accused, once the killing is established. Ark. Stat. Ann. § 41-2246. *Phillips v. Turney,* 198 Ark. 364, 129 S.W. 2d 963. These statutes are, so far as they extend, a reenactment of the common law and leave the common law, as to the extent, manner and circumstances in or under which the right may be exercised, in force. *Carpenter v. State,* 62 Ark. 286, 36 S.W. 900.

An assault upon one's house was considered as an assault upon him, at common law. *Brown v. State,* 55 Ark. 593, 18 S.W. 1051. It is so considered by this court. *Hall v. State,* 113 Ark. 454, 168 S.W. 1122. Generally, speaking, the defense of one's habitation or members of his family[1] or other persons therein is similar to, and an extension of, the right of self-defense. See *Brown v. State,* supra; *Hall v. State,* supra; *Carpenter v. State,* supra; *Wheatley v. State,* 93 Ark. 409, 125 S.W. 414; *Crawford v. State,* 231 Md. 354, 190 A. 2d 538 (1963). In either case, the danger to the person defended may be either real or apparent. *Maples v. State,* 225 Ark. 785, 286 S.W. 2d 15; *Hall v. State,* supra; *Brown v. State,* supra; *Carpenter v. State,* supra. Even though the danger may be only apparent to the slayer, it must be reasonably so or he must honestly or reasonably believe that the person defended is in such danger and that it is necessary to kill to save him from it. *Brown v. State,* supra; *Carpenter v. State,* supra; *Maples v. State,* supra.

In case of defense of habitation, however, it may be that the danger, real or apparent, need not, by the plain language of the statute, be the peril of death or great bodily harm in every case, because a violent attempt to enter with the apparent purpose of assaulting or offering personal violence does not necessarily imply the greater danger. *Hayner v. People,* 213 Ill. 142, 73 N.E. 792 (1904). In this case, there was no evidence that the victim was making a manifestly violent attempt to enter the home of appellant, but the right of one to

---

[1]The right of one to defend his close relatives from attack is widely recognized. This is so even when the "attacker" is the husband of the person defended. *Bailey v. People,* 54 Colo. 337, 130 P. 832, 45 LRA (ns) 145 (1913).

use force to prevent an intrusion into his house does not depend upon the manner of the attempt. *Brown* v. *State,* supra. The reasonableness of the defender's belief that there was danger of great bodily harm, at the least, is judged by the facts and circumstances as they appeared to him at the time. *Sledge* v. *State,* 507 S.W. 2d 726 (Tex. Cr. App., 1974); *Miller* v. *Commonwealth,* 188 Ky. 435, 222 S.W. 96 (1920). See also *Sullivan* v. *State,* 171 Ark. 768, 286 S.W. 939. Evidence which tends to explain the conduct or actions or state of mind of the deceased or the accused is admissible. See *Lasater* v. *State,* 133 Ark. 373, 198 S.W. 122; *Rogers* v. *State,* 152 Ark. 40, 237 S.W. 435.

All the sections of the Criminal Code defining justifiable homicide are parts of the same original statute and are so closely related that each to some extent explains or controls the meaning of the others. *Brown* v. *State,* supra. The rules regarding the defense of one's person and regarding defense of his habitation are generally similar. *State* v. *Miller,* 267 N.C. 409, 148 S.E. 2d 279 (1966); *Crawford* v. *State,* 231 Md. 354, 190 A. 2d 538 (1963). Every fact that would be competent evidence in a case of self-defense by the person defended is competent where the killing by the accused is alleged to be in defense of another. See *Commonwealth* v. *Girkey,* 240 Ky. 382, 42 S.W. 2d 513 (1931). This is undoubtedly the rule where both the accused and the person defended are in the same dwelling. This includes evidence of hostile feelings and previous conduct toward and communicated threats and assaults against the person defended. *King* v. *State,* 55 Ark. 604, 19 S.W. 110; *Brown* v. *State,* supra; *Hart* v. *State,* 161 Ark. 649, 257 S.W. 354. See also, *Commonwealth* v. *Girkey,* supra.

Testimony showing the conduct, declarations of hostile purposes, and communicated or uncommunicated threats of the person slain on the day and near the time of killing are admissible as part of the res gestae in self-defense cases. *Pitman* v. *State,* 22 Ark. 354. A doctrine often announced by this court is that threats and conduct of the slain person, when they tend to explain or palliate the conduct of the accused are admissible circumstantial facts which are a part of the res gestae, whenever they are sufficiently connected with the acts and conduct of the parties at the time of the killing. *Burton* v. *State,* 82 Ark. 595, 102 S.W. 362; *Palmore* v. *State,* 29 Ark. 248. The same sort of evidence is admissible as tending to show who was the aggressor where the defense is defense of

another. *Brown* v. *State,* supra; *Trapp* v. *N.M.,* 225 F. 968 (8 Cir., 1915). Cf. *Armstrong* v. *State,* 251 Ark. 865, 475 S.W. 2d 541; *Decker* v. *State,* 234 Ark. 518, 353 S.W. 2d 168; *Parsley* v. *State,* 151 Ark. 246, 235 S.W. 797; *Jackson* v. *State,* 103 Ark. 21, 145 S.W. 559; *Turner* v. *State,* 128 Ark. 565, 195 S.W. 5.

Evidence of threats made by the victim of an assault to or against someone other than the accused is admissible when it tends to show the state of mind between the parties or to show who was the aggressor or to have probative value in determining whether the accused had reason to believe that danger of bodily harm was imminent. *Rogers* v. *State,* 152 Ark. 40, 237 S.W. 436. Furthermore, such statements may well have a bearing on the question of the motives of the parties. *Prewitt* v. *State,* 150 Ark. 279, 234 S.W. 35; *Palmore* v. *State,* supra, 29 Ark. 248.

Questions as to when efforts to enter the dwelling began, how far these persons may be permitted to proceed with safety to those assailed, the necessity for the use of fatal force and other such matters must be determined from the facts and circumstances existing at the time. They are usually, as here, questions of fact, not law. *Brown* v. *State,* supra. *Hall* v. *State,* supra.

Appellant had the burden of proving all the elements of justifiable homicide including the fact that the deceased was the aggressor and that appellant had a reasonable apprehension of danger to himself or the occupants of his household. He was entitled to have the jury consider all the conduct of the deceased from the time he commenced his threats against appellant's daughter, who was, at the time of the fatal encounter, an occupant of appellant's dwelling, until the shooting, in order to determine whether there was a necessity for appellant to act in her defense or the defense of his household, or whether he honestly believed that such a necessity existed. *Hart* v. *State,* supra, 161 Ark. 649. The case of *Sanders* v. *State,* 245 Ark. 321, 432 S.W. 2d 467 as to violent disposition of the person killed toward third persons is relied upon by the state. It is not applicable here, because defense of a third person or defense of habitation was not involved there. We did recognize, however, that even uncommunicated threats are admissible when there is doubt as to who was the aggressor. The court erred in excluding this testimony. *Bailey*

v. *People,* supra, 54 Colo. 337, 130 P. 832, 45 LRA (ns) 145.

The state's argument that there was no error in exclusion of this evidence because it would have only been cumulative to appellant's own testimony is not persuasive, because corroboration of the testimony of the party most interested in the case is important. See *Hall* v. *State,* 64 Ark. 121, 40 S.W. 578.

We find no abuse of discretion on the part of the trial court in the admission of photographs over the objection of appellant. Furthermore, there was no error in the sustaining of an objection to the question by appellant's attorney whether Griffin on some occasion was shaking his finger "in a menacing manner." The question was leading and called for a conclusion.

There was no error in the denial of a motion for a directed verdict. Appellant contends that there was no substantial evidence of malice or that the killing was done without reasonable apprehension of danger on his part. He further contends that Griffin had offered considerable provocation and that there was no evidence of any circumstances manifesting an abandoned or wicked disposition on the part of appellant. The fact that there was evidence that would have supported a finding favorable to appellant does not mean that there was no evidence to the contrary. The killing was admitted. The burden of showing circumstances that excused or justified the killing was upon appellant unless they were manifest from the state's evidence. Ark. Stat. Ann. § 41-2246 (Repl. 1964). The killing was done with a deadly weapon. This in itself was sufficient basis for a finding of malice, if the jury found that the killing was without justification. *Erby* v. *State,* 253 Ark. 603, 487 S.W. 2d 266.

Griffin had not attempted to enter the house when he was shot. There was no evidence that Griffin was armed. The screen door was locked but the front door was not, even though Brockwell was expecting Griffin and testified that he latched both doors to prevent Griffin's entry on the preceding day. Brockwell had told the officers that when he fired the fatal shot he was in the middle of his house. He testified that he was in a "partial stoop" when Griffin approached the door. Max Marbury, a neighbor who lived directly across the

street testified that, on the day of the killing, Brockwell had called on the telephone and warned him to keep his family away from the front of the house because Brockwell was having trouble and might have to shoot across the road. Brockwell said nothing when he fired the fatal shot except to say to his wife and daughter, "Here he comes. You all go to the bedroom and stay in the bedroom." Brockwell had kept his gun loaded with buckshot for two days. There was certainly sufficient evidence to warrant the submission of the case to the jury.

There was no error in the trial court's exclusion of testimony of the circuit court clerk about statements made in Brockwell's efforts to obtain a restraining order against Griffin, because they were self-serving.

Appellant has massed several points together in his brief. We consider the following points as waived because they were not argued. They were:

THE COURT ERRED IN OVERRULING DEFENDANT'S OBJECTION TO CROSS-EXAMINING DEFENDANT'S WITNESS AS TO WHETHER A RESTRAINING ORDER IS EFFECTIVE.

THE COURT ERRED IN ADMITTING IRRELEVANT AND IMMATERIAL EVIDENCE AGAINST THE DEFENDANT.

THE COURT ERRED IN REFUSING TESTIMONY REGARDING APPELLANT'S KNOWLEDGE OF MARRIAGE PROBLEMS BETWEEN APPELLANT'S DAUGHTER AND THE VICTIM.

THE COURT ERRED IN PERMITTING PROSECUTING ATTORNEY TO CROSS-EXAMINE DEFENSE WITNESS CONCERNING WHO HELD TITLE TO THE BROCKWELL HOUSE.

THE COURT ERRED IN PERMITTING PROSECUTING ATTORNEY TO CROSS-EXAMINE DEPUTY CIRCUIT CLERK

REGARDING PARTIES AND PURPOSES OF RESTRAINING ORDER.

THE COURT ERRED IN REFUSING TESTIMONY OF CONVERSATIONS HAD BETWEEN THE DEPUTY PROSECUTING ATTORNEY AND THE APPELLANT PRIOR TO THE SHOOTING AS TO WHETHER APPELLANT CONSIDERED THE DECEASED A VIOLENT PERSON.

We do not agree with appellant that mere statement of any of these points is sufficient argument for reversal.

We do not agree with appellant that the trial court permitted the prosecuting attorney to harass defense counsel in examination of appellant. The examination was rather extensive in showing the condition of appellant's daughter's health. In the first place, after considerable argument, the court permitted appellant to pursue the line of examination, as far as he liked. In the next place, the court has some discretion in controlling the extent of examination on a particular matter, especially when it is of secondary importance.

We find no error in the giving of court's instruction No. 16. Appellant made no objection to remarks of the prosecuting attorney in closing argument or to those of the trial judge of which he now complains on appeal. Some of them will not likely recur on retrial; others are clearly not improper and any that were could have been corrected if a timely objection had been made. For these reasons, we forego further discussion.

The judgment is reversed and the cause remanded.

BYRD, J., concurs in the result.

HARRIS, C.J., and JONES, J., dissent.

CARLETON HARRIS, Chief Justice, dissenting. I cannot agree that the case should be reversed for the reason given by the majority.

In the first place, I find nothing in the record wherein Brockwell states that the reason he could not see whether Griffin had a gun was because the latter's shirt was hanging out. In fact, the record reveals that however the shirt was being worn (hanging or "tucked in"), this had no effect on what Brockwell could, or could not, see. From the record (cross-examination of Brockwell):

> "Q When he was coming to the house you said that you couldn't see his hands?
>
> A I did not.
>
> Q Why couldn't you see his hands?
>
> A I couldn't say. I don't know whether he had them behind him like this is the only reason that I could figure that I couldn't see his hands.
>
> Q Well, you mentioned something about he had a long shirt on.
>
> A Yes sir, he had a long shirt on, but his hands was behind him."

Now, if Brockwell could see that Griffin's hands were behind him, he certainly could have seen any movement of the hands wherein Griffin was endeavoring to get a gun out from under his shirt. Brockwell never testified that Griffin made any movement with his hands before the shooting; to the contrary, he emphatically stated that he saw no gesture or move by Griffin until he [Brockwell] fired, at which time the victim clutched himself with his right hand. Of course, if Brockwell was contending that Griffin had a gun behind his back, I cannot see the relevance of whether his shirt was in or out.

It is also my opinion that a proper objection was not made to the offer to introduce the photograph, i.e., counsel did not state that there was no proper foundation, i.e., no evidence that the shirt tail was found "tucked in" after the shooting; rather, counsel simply stated, "I don't want the

jury to be able to determine anything from something that happened after the shooting, I am making an objection." The court never ruled on the objection, and of course, the burden is on the party making the objection to obtain a ruling. *Downs v. State*, 231 Ark. 466, 330 S.W. 2d 281. The photograph was not placed in evidence.

At any rate, since it is clear to me from Brockwell's testimony that the arrangement of the shirt tail did not prevent Brockwell from knowing whether Griffin was reaching for a gun, I do not see how any prejudicial error could have resulted.

I would affirm.

JONES, J., joins in this dissent.