BENNIE ERBY v. STATE OF ARKANSAS

5777                                        487 S.W. 2d 266

Opinion delivered December 11, 1972

*Lester E. Dole,* for appellant.

*Ray Thornton,* Atty. Gen., by: *James A. Neal,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant was found guilty of murder in the second degree and his punishment fixed at 12 years' imprisonment. His sole contention for reversal is that the evidence was not sufficient to support the verdict. We find that it was, when considered in the light most favorable to the state.

There is no doubt that Nathaniel Allen, the person Bennie Erby was accused of having killed, died as the result of a gunshot wound or wounds inflicted by appellant. The shooting occurred at Cora Johnson's residence, where, appellant said, she sold beer. Appellant contends that he killed Allen in self-defense, or that, at most, the killing amounted to manslaughter. He argues that there is no evidence showing an essential element of second degree murder—malice.

Erby is crippled as a result of some sort of paralysis of his right side due to injuries in an auto accident. He was employed operating a saw machine by pushing buttons. The evidence showed Nathaniel Allen was a larger man than Erby. Appellant purchased the pistol on the day he shot Allen. He had been shooting it at his home before going to Cora Johnson's. Although he testified that there had been trouble between him and Allen on a prior occasion, he said that he had not seen Allen

recently and did not expect to see him on the Saturday night when the incident occurred. Erby testified that he went with Benny Warfield to Cora Johnson's to get a beer and had been sitting there on a bench for about 30 minutes when "Nate" came in. He said that, having just eaten dinner, he was sucking his teeth to remove meat from them, and that "Nate" jumped up with a knife, told Erby that he was not at Uncle John's and that he was going to cut Erby's throat and that he, Erby, then pulled around and shot Allen. Erby's testimony about Allen's use or possession of the knife was somewhat equivocal, and ranged from a statement that he could not see what Allen had in his hand to saying that Allen cut him on the shoulder. He claimed that he was too nervous to have told the officers about the slight knife wound. He related that, on another occasion, Allen had patted his hip, saying that he was going to cut Erby's throat.

Erby admitted that he had drunk a half-pint of liquor before going to Cora Johnson's. Officer Fletcher of the Criminal Investigation Division of the Arkansas State Police interviewed Erby, after taking him into custody about 2:30 a.m. on Sunday morning, and said that Erby was intoxicated at that time. He found four live cartridges and two spent ones in the pistol used by Erby. The officer also found a small pocket knife at the spot pointed out to him at the place Allen fell after having been shot. Fletcher testified that Erby stated that Allen had rushed at Erby and put a knife at his neck before Erby fired. The medical examiner found no powder burns about Allen's wounds.

Cora Johnson's brother, Henry Johnson, had been at the place three or four hours, drinking whiskey and watching television, before the shooting took place. He testified that Erby had been in the place more than once on this Saturday evening and that Erby was drinking beer and whiskey. According to Henry Johnson, when Bennie made a sucking sound Nate told Bennie to quit picking on him, and that Erby then went to the door and came back shooting. Johnson said he heard three

shots, but saw no knife. He said that the shooting started when Nathaniel started toward Erby.

Leroy Jones was watching television before the shooting. He heard no arguments but saw Bennie with the gun, saw Nate fall and saw Bennie then turn and walk out. He looked up when he heard the shots and saw Erby with the gun and saw Nathaniel falling, but did not see any knife. Cassie Warfield said that Nate got up, put his hand in his pocket and advanced on Erby, before she heard the gun shots. She saw no knife, but ran out the front door before shots were fired and did not see Erby with the pistol.

Ophelia Finks, Bennie's aunt, corroborated Erby's testimony that Nathaniel Allen had previously threatened Erby with a small open knife at her grocery store, saying that Allen claimed that Bennie kept "meddling" with him. She stated that, when she told them to stop and that one of them had to leave, Bennie left. She told of another time when Nathaniel had a knife after Bennie, and said that Nathaniel left on this occasion. According to this witness, they had been "jawing" at each other for several months.

Other witnesses who corroborated Erby's version said that Henry Johnson was drunk. One of them, Bennie Warfield, was unable to describe the knife he said Allen put around Erby's neck. Warfield said that after the shooting, he hid the pistol in the woods, and later showed police officers where it was. David Warfield said that he heard the sucking sound, saw Nate "jump on" Benny and heard the shots, but saw neither a gun nor a knife. Cora Johnson did not see anything in Nathaniel's hands. She had cleaned up a spot of blood on the floor, and did not know how the knife got in the position where it was found, according to her, by the third set of officers who came to the place. The sheriff testified that there was no knife in the room where the shooting occurred when he inspected the place prior to the visit by the state criminal investigator.

As indicated, there were inconsistencies and conflicts in the testimony, but these were resolved by the jury. The presence or absence of malice distinguishes between murder in the second degree and manslaughter. Malice is implied whenever there is a killing with a deadly weapon and no circumstances of mitigation, justification or excuse appear at the time of the killing. Attendant circumstances afford the only means of determining the mental attitude of the accused at the time of a killing. When the jury disbelieved the defendant's plea of self-defense, as it had a right to do, the killing was without justification, and malice might well be implied. *Bly* v. *State*, 213 Ark. 859, 214 S.W.2d 77. The jury here might well have believed from the testimony that Erby, angered by previous "jawing" between the parties, had obtained his weapon, practiced its use and sought an encounter with his real or imagined "foe." If it did, the verdict of murder in the second degree was well justified.

In many respects, this case is unlike *McClendon* v. *State*, 197 Ark. 1135, 126 S.W.2d 928, relied upon by appellant as authority for his argument that his actions could not have constituted any higher degree of homicide than manslaughter. The principal distinction lies in the lack of evidence in *McClendon* of any existing enmity between the adversaries. In *Bone* v. *State*, 200 Ark. 592, 140 S.W.2d 140, also relied upon by appellant, the court, after reciting the evidence, held it insufficient to support a second degree murder conviction in reliance upon the authority of *McClendon*, reciting that portion of the opinion in the earlier case emphasizing the lack of evidence of enmity between the parties. *Bone* is distinguishable upon the same basis as is *McClendon*.

Since we find substantial evidence to support the jury verdict, the judgment is affirmed.