James Dale COOPER, Appellant,

v.

Jerry CAMPBELL, Superintendent, Arkansas Department of Correction, Cummins Unit, and Attorney General, State of Arkansas, Appellees.

No. 78–1534.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1978.

Decided April 25, 1979.

Robert E. Hornberger, of Shaw & Ledbetter, Fort Smith, Ark., on brief for appellant.

Joseph H. Purvis, Asst. Atty. Gen., Little Rock, Ark., for appellees; Bill Clinton, Atty. Gen., on brief.

Before HEANEY, ROSS and McMILLIAN, Circuit Judges.

ROSS, Circuit Judge.

James Dale Cooper, petitioner in this habeas corpus proceeding, is serving a sentence of life imprisonment as the result of a jury verdict in the state Circuit Court of Sebastian County, Arkansas, finding him guilty of first degree murder. Cooper's judgment of conviction entered in Novem-

ber 1974 was affirmed on appeal by the Arkansas Supreme Court, as was the subsequent denial of his petition for state post-conviction relief.

Cooper sought a writ of habeas corpus in the United States District Court for the Western District of Arkansas.[1] On April 4, 1978, the district court dismissed Cooper's petition on the merits after a hearing. We affirm.

## I.

■ Petitioner raises thirteen issues on appeal. As his first ground for relief, he charges that the trial judge failed to administer a timely oath to the jury in compliance with Ark.Stat.Ann. § 43–2109, thereby violating petitioner's rights to a jury trial, a fair trial and due process.

Apparently as the result of an oversight, the jury was sworn after opening statements by counsel for both parties but before any evidence had been presented. However, after opening arguments, the court recessed for the day admonishing the jury not to discuss the case. The next morning when the oath was administered, the trial judge specifically cautioned the jury that they were not to consider the opening statements as evidence. The judge repeated this admonition in his general instructions at the end of the trial. We find no evidence that the delay in swearing the jury prejudiced petitioner's rights to a jury trial, fair trial or due process.[2]

## II.

Cooper alleges that he was tried before a jury which was biased against him as the result of pretrial publicity. He relies on *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6

---

1. The Honorable Paul X Williams, Chief United States District Judge, permitted Cooper to proceed in forma pauperis and appointed counsel to represent him.

2. Cooper also alleges that his right not to be placed in double jeopardy was implicated by the delay in swearing the jury. We find this contention without merit. Jeopardy attaches "when the jury is empaneled and sworn." *Crist v. Bretz*, 437 U.S. 28, 31, 35, 98 S.Ct.

2156, 2158, 2160, 57 L.Ed.2d 24 (1978). When these occur separately, it is unclear whether jeopardy attaches only after the jury is sworn, instead of empaneled. However, petitioner points to no error occurring prior to the administration of the oath which would constitute a mistrial, raising the possibility of a retrial he might have avoided had jeopardy attached earlier.

L.Ed.2d 751 (1961) in which the Supreme Court ruled that

> the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, "indifferent" jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process. * * * His verdict must be based upon the evidence developed at the trial.

*Id.* at 722, 81 S.Ct. at 1649.

However, the Supreme Court also stated that:

> *It is not required, however, that the jurors be totally ignorant of the facts and issues involved.* In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. *It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.*

*Id.* at 722–23, 81 S.Ct. at 1642–1643. (Emphasis added.)

On the night of the crime, June 25, 1972, Cooper engaged in a shooting spree in Hartford, Arkansas, a small town in Sebastian County. Herbert Steele and his son were riding around Hartford after hearing police reports about the shooting. A shot hit Mr. Steele, and he ultimately died. Cooper then eluded police for eighteen months until he was found hiding under a floor in his house.

In support of his petition for habeas corpus, petitioner introduced newspaper accounts of the murder and police search. These articles were circulated in Sebastian County and named petitioner, but, with one exception,[3] they were all published during June 1972. Petitioner was not tried until November 1974, almost two and one-half years after this publicity.[4] *See Murphy v. Florida*, 421 U.S. 794, 802, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975).

The voir dire testimony at petitioner's trial was not transcribed. Cooper testified at his habeas corpus hearing that many prospective jurors during the voir dire examination admitted having preconceived opinions about his case. However, Cooper conceded that these jurors also stated they were capable of changing any such opinions as the result of the evidence presented at trial.

■ Petitioner's trial attorney, the Public Defender for Sebastian County, testified that those prospective jurors who had expressed opinions concerning petitioner's guilt or innocence were struck from the panel, that none of the twelve jurors actually selected had indicated preconceived opinions and that the mood or atmosphere in the courtroom was not unusual. He also stated that in his judgment there had not been enough pretrial publicity to warrant moving for a change of venue.[5] We affirm

---

**3.** The final article merely reported petitioner's conviction and sentence after the trial.

**4.** This delay presents another ground for which petitioner seeks habeas corpus relief. After eluding authorities for eighteen months, Cooper was arrested in February 1974 and tried in November 1974. He asserts that the delay of nine months between his arrest and trial deprived him of his sixth amendment right to a speedy trial. The district court found that much of the delay was caused by disagreements between petitioner and his attorney, resulting in counsel's withdrawal from the case and appointment of the Public Defender. In addition, Cooper's original attorney consented on petitioner's behalf to his commitment for thirty days of psychiatric examination. Petitioner is unable to point to any prejudice resulting from the delay. We find no error in the district court's refusal to grant relief on this ground.

**5.** Petitioner charges that his attorney was derelict in failing to move for a change of venue and in failing to have the voir dire examination and opening statements transcribed. To sustain a charge of ineffective assistance of counsel, peti-

the district court's finding that Cooper was not deprived of a fair trial or due process by the jury's exposure to pretrial publicity.

## III.

■ As a further ground for relief, petitioner contends that he was entitled to have the jury instructed on the lesser included offenses of voluntary and involuntary manslaughter. However, *see DeBerry v. Wolff*, 513 F.2d 1336, 1338–39 (8th Cir. 1975):

Claimed errors in instructions to the jury are generally not of such constitutional magnitude and do not state a claim for habeas corpus relief. * * * More particularly the courts have held that the trial court's failure to give a lesser included offense instruction is not normally such a constitutional error or "fundamental defect" as to allow collateral review under habeas corpus.

*Accord, James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976); *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975).

■ Furthermore, the jury was charged on the lesser included offense of second degree murder but returned a verdict of murder in the first degree. Thus the failure to give instructions on other lesser offenses, even if error, was clearly harmless.

## IV.

Cooper next asserts that the evidence was insufficient to support a conviction for first degree murder. The trial record reveals that in the course of his shooting spree on June 25, 1972, Cooper threatened, shot and injured several persons. Eyewitnesses testified to these actions by Cooper, but no eyewitnesses actually saw Cooper shoot Herbert Steele.

Herbert Steele, Jr., testified that he and his father, Herbert H. Steele, had just driven their truck away from their house when a bullet hit the truck. They then drove on approximately eighty feet when another bullet struck, inflicting the fatal wound in Herbert H. Steele's lung.

■ We agree with the district court that the state was not required to produce an eyewitness who actually saw Cooper fire the shot which killed Mr. Steele. A great deal of circumstantial evidence was presented to indicate that petitioner fired this shot.

On the issue of intent, malice, wilfulness or premeditation, the district court emphasized Cooper's use of a high-powered rifle, the absence of any provocation by the victim or the others who were injured, the period of time petitioner's shooting spree consumed and the fact that two shots were fired at the Steeles' truck, the fatal shot occurring an appreciable length of time after the first shot. Cooper then fled and eluded the police for eighteen months.

■ Petitioner would be entitled to habeas corpus relief on the basis of insufficiency of the evidence "only if his conviction is totally devoid of evidentiary support." *Spratlin v. Solem*, 577 F.2d 56, 59 (8th Cir. 1978); *Wilson v. Parratt*, 540 F.2d 415, 416 (8th Cir. 1976). We agree with the district court that the evidence was sufficient to support petitioner's conviction.

## V.

■ Next petitioner alleges that the following "exculpatory" evidence was withheld from him and would have enabled him to present a more effective defense: (1) certain spent .38 caliber cartridge shells and live .410 cartridges found in Hartford after June 25, 1972, (2) some delay in taking Mr.

---

tioner must establish that counsel was incompetent, i. e., that he "failed to perform some essential duty and that the defense was prejudiced thereby." *Harshaw v. United States*, 542 F.2d 455, 456–57 (8th Cir. 1976). At most, counsel's failure to order transcription of the voir dire testimony and opening statements reflected poor judgment, not dereliction of duty. " '[T]he exercise of a defense attorney's professional judgment should not be second-guessed by hindsight. . . .' A wrong or poorly

advised decision by a defense attorney is not alone enough to support a subsequent claim of ineffective counsel." *United States v. Bad Cob*, 560 F.2d 877, 881 (8th Cir. 1977) (citations omitted.) Furthermore, "[m]ere exposure to publicity or the formation of tentative impressions by some jurors is not enough to require a change of venue." *United States v. Brown*, 540 F.2d 364, 378 (8th Cir. 1976). This claim, raised for the first time on appeal, is without merit.

Steele to the hospital after he was shot, and (3) a traffic accident involving the vehicle carrying Mr. Steele to the hospital.

"[S]uppression by the prosecution of [requested] evidence favorable to an accused * * * violates due process * * *." *Austin v. Wyrick*, 535 F.2d 443, 445 (8th Cir. 1976), *citing Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, we find that this evidence was neither exculpatory nor withheld.

Mr. Steele died as the direct result of a shot in the lung from a .243 caliber rifle, not a .38 or .410 bullet. Furthermore, he died almost instantly after being shot, so that the delay and traffic accident were irrelevant to the cause of death.

The state prosecutor testified before the district court that his office had an "open file policy" granting access to all files and exhibits upon the request of a defense attorney. In addition, petitioner conceded before the district court that he knew about the cartridges and traffic accident three months before his trial.

### VI.

The prosecution introduced evidence of Cooper's entire shooting episode on June 25, 1972, including injuries he inflicted on persons other than Mr. Steele. Petitioner objects that this "other crimes" evidence prejudiced his right to a fair trial.

Evidence of a defendant's criminal acts not charged in the indictment or information "may be presented when 'they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged.'" *United States v. Miller*, 508 F.2d 444, 448–49 (7th Cir. 1974). *Accord, Ignacio v. Territory of Guam*, 413 F.2d 513, 520 (9th Cir. 1969), *cert. denied*, 397 U.S. 943, 90 S.Ct. 959, 25 L.Ed.2d 124 (1970).

The evidence was essential to prove the context of the crime and petitioner's intent, opportunity, preparation, plan, knowledge, identity and absence of mistake or accident. The trial judge cautioned the jury concerning the limited purpose for which the evidence had been introduced.[6]

### VII.

Petitioner's remaining contentions concern evidentiary rulings by the trial court. The court admitted the opinion of a ballistics expert that the class characteristic markings on the shell fragments taken from Mr. Steele's body showed that the bullet had been fired from a .243 caliber rifle like that used by Cooper on June 25, 1972. The fragments were too mutilated for the expert to state with certainty that they had been fired from petitioner's rifle.

The court also permitted testimony concerning petitioner's flight and the circumstances of his ultimate capture. Petitioner concedes that evidence of escape or flight may be relevant to the issues of intent, but he objects that the evidence was unreliable as innocent people also may flee.

Finally, Cooper objects to the admission of (1) his hunting cap found at the residence of one of the persons petitioner threatened on the evening of the shooting and (2) spent cartridges which the ballistics expert testified came from petitioner's rifle. He claims this evidence, also, was unreliable.

We find no error in these evidentiary rulings. Furthermore,

[t]he question of admissibility of evidence usually is a matter of state law and procedure and does not involve federal constitutional issues. And ordinarily habeas corpus being a collateral attack is not considered to be a proper remedy for correcting errors in trial procedure. It is only where the trial errors or irregularities infringe upon a specific constitutional protection or are so prejudicial as to

---

**6.** Cooper objects to the language of the court's cautionary instruction. In the course of explaining the limited purpose for which the evidence of petitioner's conduct on the night of the shooting was admitted, the court characterized petitioner's acts as "misconduct or any criminal activity, or any activity that meets with your disapproval." Petitioner alleges that these statements by the judge amounted to an improper comment on the evidence. We disagree.

amount to a denial of due process that a justiciable federal issue is presented in a habeas corpus proceeding.

*Hogan v. Nebraska*, 535 F.2d 458, 460 (8th Cir. 1976). Even if any of the challenged evidentiary rulings did constitute error, we hold that singly or in combination they did not infringe on a specific constitutional right or amount to a denial of due process.

The judgment of the district court is affirmed.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. Although I agree with the majority opinion on all other issues, I cannot agree with the majority's disposition of Cooper's claim that he was entitled to manslaughter instructions. In my view, the trial court's failure to give the requested instructions was an error of constitutional significance which is cognizable in habeas corpus, and which cannot be dismissed as harmless error.

Normally, jury instructions in state criminal trials are matters of state law, and errors in such instructions are not of constitutional proportion. However, under some circumstances, errors in instructions may render a trial so fundamentally unfair as to constitute a denial of due process. *See, e. g., United States ex rel. Matthews v. Johnson*, 503 F.2d 339 (3d Cir. 1974), *cert. denied sub nom. Cuyler v. Matthews*, 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975). We should, therefore, reject any *per se* rule that the failure of a state trial court to instruct on lesser included offenses is not reviewable in habeas corpus. Each case should receive a careful, independent examination to determine whether, on the basis of its particular facts, the instructional error constituted a violation of due process.[1]

In Arkansas, as in the majority of jurisdictions, *see* Annot. 102 A.L.R. 1017 (1936),

the rule is that where there is no evidence to support an instruction on a lower grade of homicide, it is not error for the trial court to refuse to give such an instruction. *Shelton v. State*, 261 Ark. 816, 552 S.W.2d 216 (1977); *Strothers v. State*, 252 Ark. 538, 479 S.W.2d 870 (1972); *Freeman v. State*, 240 Ark. 915, 403 S.W.2d 61 (1966). However, where there is any evidence from which the jury might legitimately infer that the defendant was guilty of a lower grade of homicide, the court is obligated to instruct on such offense, *Gilchrist v. State*, 241 Ark. 561, 409 S.W.2d 329 (1966), and failure to so instruct is reversible error. *Langley v. State*, 261 Ark. 539, 549 S.W.2d 799 (1977); *Bosnick v. State*, 248 Ark. 846, 454 S.W.2d 311 (1970); *Montague v. State*, 240 Ark. 162, 398 S.W.2d 524 (1966).

In this case, the trial court properly instructed the jury on first and second degree murder but refused to give requested manslaughter instructions. My reading of the record convinces me that there was evidence to support such instructions and that the trial court erred in refusing to give them.

Under the Arkansas homicide statutes applicable at the time of the crime and petitioner's conviction,[2] murder was defined as "the unlawful killing of a human being * * * with malice aforethought, either express or implied." Ark.Stat.Ann. § 41–2201 (1964 Repl.). First degree murder was distinguished from second degree murder primarily by the requirement of premeditation and deliberation. *See* Ark.Stat.Ann. §§ 41–2205, 41–2206 (1964 Repl.). Malice was an essential element of both first and second degree murder. *McGaha v. State*, 216 Ark. 165, 224 S.W.2d 534 (1949); *Ballentine v. State*, 198 Ark. 1037, 132 S.W.2d 384 (1939). Manslaughter was defined generally as the unlawful killing of a human

---

1. Despite the fact that some cases flatly state the rule that the failure to give lesser included offense instructions is not reviewable in habeas corpus, *see, e. g., James v. Reese*, 546 F.2d 325 (9th Cir. 1976); *Bonner v. Henderson*, 517 F.2d 135 (5th Cir. 1975), many other cases recognize that the critical inquiry even with respect to lesser included offense instructions is whether the error was such as to render the trial funda-

mentally unfair and a violation of due process. *See, e. g., Bradley v. Wainwright*, 561 F.2d 1200 (5th Cir. 1977); *Higgins v. Wainwright*, 424 F.2d 177 (5th Cir. 1970).

2. The entire Arkansas criminal code, including the homicide provisions, was substantially revised subsequent to the dates relevant in this case.

being without malice express or implied and without deliberation. Ark.Stat.Ann. § 41-2207 (1964 Repl.). Thus, the presence or absence of malice distinguished murder from manslaughter. *Erby v. State*, 253 Ark. 603, 487 S.W.2d 266 (1972).

Malice is a term of art describing the criminal state of mind or intent required for a killing to be murder. Malice is express when the deliberate intention to take the life of another human being can be proved by external facts. Ark.Stat.Ann. § 41–2203 (1964 Repl.). Malice may also be implied by all the circumstances of the case. Thus, malice may be implied when there is no evidence of provocation or by circumstances manifesting an "abandoned and wicked disposition," Ark.Stat.Ann. § 41–2204 (1964 Repl.), or by the use of a deadly weapon absent circumstances of mitigation, justification, or excuse. *Erby v. State, supra.* The presence or absence of malice is a question of fact for the jury and the jury has the responsibility for determining whether or not malice is implied by all the circumstances. *McGaha v. State, supra.*

The evidence in this case was that petitioner went on a rampage for a period of an hour or more, shooting, apparently randomly, at people and homes all over a small town. The victim was shot while driving his truck on the street. No one saw petitioner shoot the victim, but there was ballistics evidence linking the fatal bullet with petitioner's weapon. I agree with the majority that the evidence was sufficient to support a verdict of first degree murder. There was clearly testimony from which the jury could properly have drawn the inference that the killing was committed with malice. The point is, however, that such an inference was not required by the evidence. On the facts of this case, where no witnesses saw petitioner shoot the victim, there was no express evidence of malice. Furthermore, malice in the shooting of the victim was not conclusively implied by the circumstances that petitioner was observed

firing his weapon at other places and other times during the evening. The determination as to whether malice existed was for the jury. The jury was given the choice only of convicting petitioner of first or second degree murder, both of which require malice, or acquitting him. By refusing to give the requested manslaughter instructions the trial court effectively removed the issue of malice from the jury. *See United States v. Thompson*, 492 F.2d 359, 363 (8th Cir. 1974).

On petitioner's state appeal the Arkansas Supreme Court did not examine the record to determine whether the evidence was sufficient under state law to require the giving of the requested manslaughter instructions.[3] Rather, the court considered that even if the omission was error it was harmless because the jury was instructed on both first and second degree murder but returned a verdict of first degree murder. The majority opinion here adopts this rationale. I cannot consider the error harmless. Because malice is an essential element of both first and second degree murder the jury lacked a meaningful opportunity to consider whether or not petitioner, even if he fired the fatal shot, did so with the requisite criminal intent that would constitute murder. Since it cannot be concluded beyond a reasonable doubt that there would have been no difference in the verdict if the jury had been properly instructed, the error cannot be considered harmless. *See United States v. Weir*, 575 F.2d 668, 671 (8th Cir. 1978).

Finally, at the time of petitioner's conviction the penalties prescribed by Arkansas statute for the various grades of homicide were as follows: first degree murder—life imprisonment; second degree murder—five to twenty-one years imprisonment; voluntary manslaughter—two to seven years; involuntary manslaughter—not greater than three years and/or a fine. Ark.Stat.Ann. §§ 41–2227 to 2230 (1964 Repl.). In view of the considerable discrepancy in the penal-

---

**3.** This case is, therefore, distinguishable from *Hallowell v. Keve*, 555 F.2d 103 (3d Cir. 1977), in which the federal court considered that it was bound by the interpretation of state law by the highest state court that the requested in-

structions were not supported by the evidence, and held due process was not offended by the refusal of the trial court to instruct on a matter not presented by the evidence.

ties prescribed for murder and for manslaughter, the petitioner had a substantial liberty interest in having the jury properly instructed. *See Mullaney v. Wilbur,* 421 U.S. 684, 698, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Under the circumstances of this case—where the facts clearly warranted the lesser included offense instructions, where such instructions were timely requested,[4] where the failure to give the instructions had the practical effect of removing an essential element of the crime from consideration by the jury, and where the penalty differential is substantial—I believe that the failure to give the instructions rendered petitioner's trial fundamentally unfair and that petitioner is entitled to habeas relief. Accordingly, I would grant the petition for a writ of habeas corpus subject to the state's right promptly to retry petitioner for the offense.

**4.** The case is thus distinguishable from, *e. g., United States ex rel. Rooney v. Housewright,* 568 F.2d 516 (7th Cir. 1977), and *Higgins v. Wainwright, supra* note 1 (failure to give manslaughter instructions is not denial of due process since defendant did not request instructions at trial); *Bradley v. Wainwright, supra* note 1 (submission of case to jury on first degree murder only is not denial of due process since so submitted with defendant's consent).