

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Miguel Bonilla Peña, et al.<br><br>Peticionarios | Certiorari<br><br>2011 TSPR 163<br><br>183 DPR _____ |

Número del Caso:  CC - 2011 - 240

Fecha: 3 de noviembre de 2011

Tribunal de Apelaciones:

Región Judicial de Ponce

Juez Ponente:          Hon. Laura Ivette Ortiz Flores

Abogados de la Parte Peticionaria:

Lcdo.    Athos Vega, Jr.

Oficina de la Procuradora General:

Lcd a. Eva S. Soto Castelló
Procuradora General Auxiliar

Materia:    Asesinato en Primer Grado

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a    la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

      Recurrido

         v.                  CC-2011-240

Miguel Bonilla Peña, *et al.*

      Peticionarios

Opinión del Tribunal emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 3 de noviembre de 2011.

Nos corresponde resolver, por primera vez, si no tomarle el juramento definitivo a uno de los integrantes de un jurado es causa suficiente para anular un juicio criminal y ordenar la celebración de un nuevo proceso. Para ello, debemos analizar qué tipo de error se cometió cuando no se tomó el juramento definitivo a un jurado y si este error podía ser impugnado con objeciones oportunas de la defensa de modo que se preservara el asunto en el récord para la fase apelativa.

Por otro lado, una segunda controversia que debemos atender es si la imposición de la pena por parte del juez del Tribunal de Primera Instancia,

quien consideró factores agravantes no analizados por el jurado y se excedió de la pena fija dispuesta por el estatuto penal, es contrario a lo resuelto por el Tribunal Supremo federal en Apprendi v. New Jersey, 530 U.S. 466 (2000), y por este Tribunal en Pueblo v. Santana Vélez, 177 D.P.R. 61 (2009).

I.

Por hechos ocurridos en Santa Isabel en 2002, el Ministerio Público acusó a cinco hombres, los aquí peticionarios, de asesinato en primer grado y varias violaciones a la Ley de Armas, Ley Núm. 404 del 11 de septiembre de 2000, según enmendada, 25 L.P.R.A. sec. 455 et seq. Al quinteto se le acusó, específicamente, de abordar un vehículo alquilado con cuatro revólveres calibre .38, una pistola calibre .45 y una escopeta de cañón recortado, y disparar repetidas veces contra Alexis Conde Torres, con premeditación y deliberadamente, hasta causarle la muerte. Los cinco acusados – Miguel Bonilla Peña, Pedro Maldonado Matos, José Rodríguez Berríos, Francisco Rodríguez Herrera y Ángel Pérez Rodríguez – ejercieron su derecho constitucional a ser juzgados por un jurado compuesto por sus pares.

Tras el juicio celebrado en octubre de 2007, el jurado, en votación nueve a tres, halló culpables a los cinco acusados por los cargos de asesinato en primer

grado, tipificado en el Art. 83 del Código Penal de 1974.[1]
Asimismo, el jurado los halló culpables a cada uno por
cinco cargos de violar el Art 5.04 de la Ley de Armas
(Portación y uso de armas de fuego sin licencia), 25
L.P.R.A sec. 458 (c), y por una infracción al Art. 5.07 de
la Ley de Armas (Posesión y uso ilegal de armas largas
semiautomáticas, automáticas o escopeta de cañón corto),
25 L.P.R.A. sec. 458 (f).

Dos meses después del juicio, la defensa solicitó
que se dejara sin efecto el veredicto del jurado porque,
presuntamente, no se le había tomado el juramento
definitivo a uno de los integrantes de ese cuerpo, el Sr.
Omar Alvarado Marrero.[2] Según la defensa, la ausencia del
juramento definitivo a uno de los integrantes del jurado
debe suponer un "mistrial", con la consecuencia de
disolver al jurado como lo permite la Regla 144 de
Procedimiento Criminal, 34 L.P.R.A. Ap. II. En la
alternativa, lo que correspondía era ordenar un nuevo
juicio al amparo de la Regla 188 de Procedimiento

---

[1] El Código Penal de 1974 era el que estaba en vigor al momento de los hechos, ocurridos en 2002, dos años antes de que entrara en efecto el actual Código Penal.

[2] En el expediente no hay constancia, ni debe haberla, de cómo votó el señor Alvarado Marrero tras su deliberación en este caso. Las deliberaciones del jurado, y la forma en que votó cada integrante individualmente, son de carácter secreto. Como hemos dicho anteriormente, el proceso de razonamiento individual o colectivo del Jurado no puede ser develado, ya que tal intromisión acarrearía la desaparición de la franqueza y libertad de discusión. Pueblo v. Echevarría Rodríguez, 128 D.P.R. 299, 338 (1991).

Criminal, 34 L.P.R.A. Ap. II. Específicamente, la defensa adujo en una moción que, "por el jurado no estar legalmente constituido, no tenía facultad para pasar juicio sobre la culpabilidad o no culpabilidad de los acusados de epígrafe y por tanto fue un veredicto contrario a derecho".

El Tribunal de Primera Instancia reconoció que el planteamiento era novel en nuestra jurisdicción, pero, mediante una resolución y orden, proveyó no ha lugar a la moción de la defensa y mantuvo en vigor el veredicto de culpabilidad emitido por el jurado. Fundamentó su decisión en que, desde octubre de 2006 hasta octubre de 2007, hubo 20 vistas o eventos procesales en los cuales ninguna de las partes le señaló al tribunal que uno de los jurados carecía del juramento definitivo. Más aun, destacó que en mayo de 2007, tras varias posposiciones del juicio, el Ministerio Público solicitó la disolución del jurado y la defensa manifestó que prefería continuar los procedimientos con el jurado tal como estaba constituido en ese momento. El foro de primera instancia concluyó que el Sr. "Omar Alvarado Marrero entendió el espíritu del juramento, el propósito de la selección de un jurado y sus deberes como jurado, según le fue enfatizado en los procedimientos de desinsaculación de jurado, del *voir dire* y de las instrucciones al jurado".

El mismo día en que tomó la decisión de validar el juicio penal, el foro primario emitió una sentencia en la que le impuso una pena carcelaria de 204 años a cada uno

de los peticionarios. Inconforme con la decisión, la defensa acudió al Tribunal de Apelaciones y planteó como error el veredicto de un jurado indebidamente constituido. El foro apelativo intermedio confirmó al Tribunal de Primera Instancia en una sentencia emitida el 30 de noviembre de 2010. Aunque ambos foros llegaron al mismo resultado de validar el veredicto del jurado, el análisis del Tribunal de Apelaciones en torno a la juramentación definitiva del jurado número dos fue distinto. Al citar el acta del proceso de desinsaculación, el Tribunal de Apelaciones resaltó que esta señala:

> El jurado queda constituido de la siguiente manera:
> […]
> 2. Omar Alvarado Marrero
> […]
> Se procede con la juramentación definitiva a los jurados seleccionados.

El anterior fragmento de lo que aconteció en la desinsaculación del jurado conduce al Tribunal de Apelaciones a resolver que, "a pesar de que el acta indica que el jurado Omar Alvarado Marrero no se encontraba inicialmente en sala, el tribunal recurrido indicó que este se encontraba entre las personas que prestaron el juramento definitivo establecido en la Regla 125 de Procedimiento Criminal el 15 de septiembre de 2006".

Aun inconforme con la decisión, la defensa solicitó reconsideración ante el Tribunal de Apelaciones y entonces argumentó, por primera vez, que la sentencia estaba reñida con lo resuelto por este Tribunal en Pueblo v. Santana

Vélez, *supra,* pues el juez de primera instancia tomó en cuenta factores no contemplados por el jurado y dispuso penas carcelarias que excedían el término fijo dispuesto por el estatuto. El Tribunal de Apelaciones mantuvo su decisión original y no atendió los asuntos relacionados con la aplicabilidad de Pueblo v. Santana Vélez, *supra*, a esta controversia.

Tras ello, los peticionarios acuden ante nos. Sostienen que el foro intermedio erró al no revocar el veredicto de un jurado que se constituyó indebidamente ante la posibilidad de que uno de sus miembros no hubiese tomado el juramento definitivo. Asimismo, alegan que la norma que establecimos en Pueblo v. Santana Vélez, *supra*, tiene carácter retroactivo a todos aquellos casos que no hayan advenido finales y firmes al día en que se emitió el dictamen, es decir, el 13 de octubre de 2009. Como el presente caso no había advenido final y firme para esa fecha, Pueblo v. Santana Vélez, *supra*, le aplica a la presente controversia, según esbozó la defensa en su comparecencia ante nos.

Mediante resolución emitida el 24 de junio de 2011 y notificada el 29 de junio de 2011, le concedimos un término de 20 días a la Procuradora General para que mostrara causa por la cual, a la luz de Pueblo v. Santana Vélez, *supra*, este Tribunal no debía modificar la sentencia dictada para atemperarla a nuestra jurisprudencia. La Procuradora General compareció para reclamar que la defensa expuso por primera vez el error

respecto al término de las sentencias en la fase de apelación. Esto, según la Procuradora General, vicia el señalamiento pues se debió haber hecho a nivel de primera instancia.

El recurso de *certiorari* se expidió y, tras examinar los escritos de ambas partes, procedemos a resolver. Analizamos en la Parte II de esta Opinión los planteamientos sobre el juramento definitivo a un miembro del jurado y, en la Parte III, pasamos juicio sobre la aplicabilidad de Pueblo v. Santana Vélez, *supra*, a esta controversia.

II.

A.

Todos los miembros del jurado que entienden en procesos criminales en nuestra jurisdicción están obligados a prestar dos juramentos. Primeramente, se les exige el juramento preliminar que se hace previo a la desinsaculación del jurado. En segundo lugar, está el juramento definitivo que se toma una vez concluida la desinsaculación y previo al juicio propiamente. Así, el juramento preliminar que exige la Regla 119 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, es distinto, y se requiere en una fase procesal diferente, que el definitivo contemplado por la Regla 125, 34 L.P.R.A. Ap. II.

La Regla 119 de Procedimiento Criminal, *supra*, exige un juramento preliminar que se toma individual o colectivamente en el cual el potencial miembro del jurado

afirma o jura que contestará veraz y fielmente todas las preguntas que se le hagan respecto a su capacidad para actuar como jurado. *Íd.* Es decir, el juramento preliminar se toma buscando garantizar que cierto individuo esté capacitado para servir como jurado. Dicho juramento preliminar se toma previo a la desinsaculación del jurado, fase en la cual la defensa y la fiscalía pueden excluir potenciales miembros del jurado mediante los mecanismos dispuestos para ello. Si un individuo ha sido seleccionado para formar parte del jurado que entenderá en los procedimientos criminales contra un acusado, se le requerirá entonces que preste otro juramento – el definitivo exigido por la Regla 125 de Procedimiento Criminal, *supra* – que en esta ocasión busca garantizar que actuará de forma imparcial y con rectitud al oír a las partes y deliberar.

Este Tribunal no ha resuelto, como tampoco lo ha hecho el Tribunal Supremo de Estados Unidos, qué consecuencias, si alguna, tiene la ausencia del juramento definitivo de un solo miembro del jurado. Podemos colegir desde este momento, sin embargo, que el juramento definitivo no es un mero formalismo. La importancia del juramento definitivo del jurado en nuestro ordenamiento penal es tal que ese evento procesal es precisamente el que activa la protección contra la doble exposición o "double jeopardy". Lo anterior se debe a que ese juramento definitivo "marca el inicio del juicio o la exposición del acusado a riesgo de convicción". E.L. Chiesa Aponte,

_Derecho procesal penal de Puerto Rico y Estados Unidos_,
Colombia, Ed. Forum, Tomo III, 1995, pág. 288.

Así, no podemos tomar a la ligera la posibilidad de
que un miembro del jurado no haya jurado o afirmado
formalmente su respuesta afirmativa a la siguiente
pregunta:

> Vosotros y cada uno de vosotros, ¿juráis
> solemnemente desempeñar bien y fielmente
> vuestro cargo, juzgando con rectitud la causa
> que pende ante este tribunal y emitiendo un
> veredicto imparcial de conformidad con la
> prueba producida? Así os ayude Dios. 32
> L.P.R.A. Ap. II., R. 125

A pesar de la importancia procesal del juramento
definitivo, la jurisprudencia federal muestra una
tendencia rígida en contra de declarar errores manifiestos
o "plain errors" cuando la defensa reclama que hubo
irregularidades respecto a la constitución del jurado o su
proceso deliberativo. Véase W.R. LaFave, _Criminal_
_Procedure_, Estados Unidos, Ed. Thomson West, Tomo VII,
2007, págs. 89-90. Por ejemplo, el Tribunal Supremo
federal ha resuelto que la decisión de un foro primario de
permitir que estuvieran presentes jurados alternos en la
deliberación final no constituyó un error manifiesto o
"plain error" que pudiera corregirse automáticamente a
través de las Reglas de Evidencia federales. _U.S. v._
_Olano_, 507 U.S. 725 (1993). En otras palabras, el Tribunal
Supremo federal mantuvo en vigor el veredicto a pesar de
que en la deliberación estuvieron presentes jurados
alternos ajenos a los que tomarían la decisión. Asimismo,
el máximo foro federal resolvió que tampoco era un error

manifiesto haber privado a un jurado de evaluar, en un procesamiento criminal por perjurio, si era esencial o no la naturaleza de la declaración bajo escrutinio. Johnson v. U.S., 520 U.S. 461 (1997).

Los casos anteriormente discutidos tratan sobre la figura del jurado y el proceder del máximo foro judicial federal ante el reclamo de alguna irregularidad en el proceso deliberativo de esa institución. A pesar de que, como dijimos anteriormente, no hay ningún caso del Tribunal Supremo federal que atienda puntualmente el asunto ante nos, es evidente la tendencia de analizar con reservas cualquier reclamo de error manifiesto que se plantea para revertir automáticamente la actuación del jurado.

Por otro lado, los circuitos federales, así como los foros apelativos y supremos de otras jurisdicciones, han atendido anteriormente situaciones en que los jurados no han juramentado hasta una etapa avanzada del juicio. Sin embargo, en todos los casos examinados se evalúa la ausencia de juramento de la totalidad del jurado, no de uno solo de sus miembros. Más aun, se trata de casos en los cuales el juramento definitivo, aunque tardíamente, sí se tomó previo a la deliberación y veredicto final.

En Cooper v. Campbell, 597 F.2d 628 (1979), el Tribunal federal de Apelaciones para el Octavo Circuito se enfrentó a una solicitud de habeas corpus en la cual el peticionario alegó que el juramento tardío que se le tomó al jurado que lo juzgó en una corte de Arkansas violó sus

derechos constitucionales a juicio por jurado, a un juicio justo e imparcial y a su debido proceso de ley. El jurado había sido juramentado luego de los informes iniciales de las partes ("opening statements"), pero antes de la presentación de la evidencia. El circuito apelativo federal resolvió que "no hallamos evidencia alguna que la demora en la juramentación del jurado haya perjudicado los derechos del peticionario de tener un juicio por jurado, un juicio justo e imparcial, y su debido proceso de ley". *Íd.* (Traducción suplida.)

El Tribunal federal de Apelaciones para el Quinto Circuito, por su parte, también tuvo que analizar un planteamiento de que la juramentación tardía del jurado era un error de tal naturaleza que ameritaba la revocación del veredicto; en otras palabras, que se trataba del llamado "reversible error" contemplado por las Reglas de Evidencia federales, y por las Reglas 104, 105 y 106 de Evidencia de 2009. Véase In re Aprobación Reglas de Evidencia, 175 D.P.R. 478, 483-485 (2009). En U.S. v. Hopkins, 458 F. 2d 1353 (1972), el peticionario argumentó ante el Quinto Circuito que la toma del juramento al jurado después de que la fiscalía sometiera su caso equivalía a un error que acarreaba la revocación del proceso criminal en su contra. No obstante, en el juicio en instancia, la defensa no hizo objeción alguna en torno a la juramentación tardía del jurado. El circuito apelativo federal en U.S. v. Hopkins, *supra*, manifestó que, al examinar decisiones de otras jurisdicciones, se

percató que esta situación solía tratarse como una de error no perjudicial o "harmless error". Al coincidir con las jurisdicciones estudiadas, el Quinto Circuito resolvió que:

> No prejudice has been shown by the delayed swearing of the jury, no objection was made, and the oath was administered before the jury retired to begin its deliberations. Given all of these circumstances, any error was clearly harmless. *Íd.*

Por su parte, el foro apelativo intermedio de Nueva York – la División Apelativa de la Corte Suprema estatal – resolvió en un caso similar que, "en ausencia de perjuicio, la dilación en la toma de juramento no amerita la revocación del veredicto". People of the State of New York v. Morales, 168 A.D.2d 85 (1991). (Traducción suplida.) En ese caso, sin embargo, tanto la defensa como la fiscalía advirtieron al tribunal que el juramento al jurado no se había tomado. El tribunal tomó el juramento justo antes de que la defensa presentara sus argumentos, pero luego de que la fiscalía sometiera su caso. Cuando se le cuestionó a la defensa si tenía alguna objeción, esta respondió: "Tenemos objeción al momento, eso es todo". *Íd.* No hubo solicitud de la defensa para que se decretara un "mistrial", absolución de jurado y no se requirió otra instrucción al jurado.

La defensa, sin embargo, presentó el argumento en la fase apelativa, pero el foro intermedio de Nueva York resolvió que, por la objeción incompleta anteriormente descrita, el asunto no había sido preservado en el récord.

El foro apelativo neoyorquino concluyó que la tendencia de los casos estatales y federales sostiene que una dilación en la juramentación del jurado es meramente una anomalía técnica y no es, de suyo, un error que amerite revertir el veredicto. *Íd*. La corte apelativa de Nuevo México también ha resuelto este asunto de manera similar. Véase New Mexico v. Apodaca, 105 N.M. 650 (1987).

Asimismo, la Corte Suprema de Vermont determinó que era vital que la defensa objetara oportunamente una deficiencia en la juramentación del jurado. Vermont v. Roberge, 155 Vt. 121 (1990). Allí, luego de que el Ministerio Público sometió su caso, y durante un receso del tribunal, el fiscal se percató de que el jurado no había sido juramentado ese día al inicio del juicio. La defensa, de manera explícita, se negó a objetar la situación y el tribunal procedió al juramento tardío, por lo cual se desestimaron los planteamientos en las fases apelativas.

B.

A pesar de que los casos estatales y de los circuitos federales anteriormente citados no son vinculantes de forma alguna para este Tribunal, arrojan luz sobre cómo otras jurisdicciones han atendido situaciones similares. No obstante, las circunstancias ante nos son distintas de los casos citados porque la controversia actual trata de un solo miembro del jurado – no la totalidad del cuerpo institucional – que posiblemente jamás juramentó, ni oportuna ni tardíamente. Sin embargo, como vimos en la

sección previa, la tendencia de otras jurisdicciones es que tratan la ausencia del juramento del jurado como una situación en la cual es necesario objetar oportuna, específica y correctamente. No se trata en estos casos, pues, de un error extraordinario como el contemplado por nuestra Regla 106 de Evidencia, *supra*, ni mucho menos de un error estructural que acarrea la revocación automática por haber lacerado los cimientos más básicos del proceso adversativo.

Se trata, más bien, de un error en el juicio gobernado por las Reglas 104 y 105 de Evidencia, *supra*. El Inciso (a) de la Regla 104 de Evidencia sobre "Admisión o exclusión errónea de evidencia" dispone:

(A) Requisito de objeción

> La parte perjudicada por la admisión errónea de evidencia debe presentar una **objeción oportuna, específica y correcta** o una moción para que se elimine del récord evidencia erróneamente admitida cuando el fundamento para objetar surge con posterioridad. Si el fundamento de la objeción surge claramente del contexto del ofrecimiento de la evidencia, no será necesario aludir a tal fundamento. (Énfasis suplido.)

Asimismo, la Regla 105 de Evidencia explica el efecto del error en la admisión o exclusión de evidencia:

(A) Regla general

> No se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni se revocará por ello sentencia o decisión alguna a menos que: (1) la parte perjudicada con la admisión o exclusión de evidencia hubiere satisfecho los requisitos de objeción, fundamento u oferta de prueba establecidos en la Regla 104 y (2) el Tribunal que considera el señalamiento

estime que la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida o decisión cuya revocación se solicita.

(B) Error constitucional

Si el error en la admisión o exclusión constituye una violación a un derecho constitucional de la persona acusada, el tribunal apelativo sólo confirmará la decisión si está convencido más allá de duda razonable que, de no haberse cometido el error, el resultado hubiera sido el mismo.

Por último, la Regla 106 de Evidencia dispone que, aun si no se satisfacen las exigencias explicadas en la Regla 104 de Evidencia de objetar oportunamente, un tribunal apelativo podrá considerar un señalamiento de error y revocar una sentencia o decisión. Se trata del llamado "error extraordinario" y solo procederá, según la Regla 106, cuando se satisfagan las siguientes condiciones: el error fue craso ya que no cabe duda de que fue cometido; el error fue perjudicial porque tuvo un efecto decisivo o sustancial en la decisión cuya revocación se solicita; y el no corregirlo resultaría en un fracaso de la justicia.

Del expediente de este caso surge que el Tribunal de Primera Instancia le tomó el juramento definitivo al jurado en septiembre de 2006. Sin embargo, de un examen hecho por el propio foro de primera instancia de la vista de desinsaculación del jurado ante el Honorable Juez Roberto Angleró Ortiz, proceso celebrado los días 10 de agosto y 15 de septiembre de 2006, "surge que el jurado

número dos, Omar Alvarado Marrero, no se encontraba presente por razón de enfermedad cuando se tomó el juramento definitivo conforme la Regla 125 de Procedimiento Criminal". No obstante, el examen realizado por ese foro también arroja que, el mismo día en que se tomó el juramento definitivo, el señor Alvarado Marrero se integró a las labores del jurado.

Los peticionarios reconocen que no hubo objeción alguna durante el juicio a la presunta irregularidad en el proceso de juramentación de un miembro del jurado. Si tomamos en cuenta las Reglas de Evidencia anteriormente transcritas, así como los casos analizados en la sección previa, es evidente la importancia de que la defensa haga una objeción específica, oportuna y fundamentada sobre una irregularidad que detecta en la juramentación de un jurado o en cualquier otro asunto procesal del juicio. Es sabido que un derecho, incluso de naturaleza constitucional, puede ser renunciado en casos criminales si no se hace una defensa oportuna de dicho derecho. Yakus v. U.S., 321 U.S. 414, 444 (1944).

El foro primario destacó en su resolución que hubo 20 oportunidades, en las diferentes vistas y eventos procesales relacionados con este caso, para que la defensa hiciera planteamientos sobre este asunto y, sin embargo, no los hizo. Más aun, es la propia defensa, en su comparecencia ante nos, la que admite que el asunto pasó desapercibido para ellos así como para la fiscalía y el juez. La defensa arguye que no se les puede penalizar por

ese desliz y que se percataron del asunto apenas dos días después de concluido el caso.

No cabe duda que la juramentación definitiva del jurado está fundamentada en los principios constitucionales enmarcados en la Sexta Enmienda de la Constitución estadounidense, Emda. VI, Const. EE.UU., L.P.R.A. Tomo 1, y en el Art. II, Secc. 11, de la Constitución del E.L.A., L.P.R.A., Tomo 1, que establecen el derecho a que un acusado sea juzgado imparcialmente por sus pares constituidos como un jurado. Por ello, resolvemos hoy, por vez primera, que la ausencia de juramentación de un miembro del jurado debe analizarse como un error constitucional según lo dispuesto en la Regla 105 (B) de Evidencia. Así, la no juramentación de un miembro del jurado constituye una violación a un derecho constitucional de la persona acusada que la defensa deberá objetar oportunamente y que el juez de primera instancia estará obligado a remediar con la toma de juramento, aunque sea de manera tardía en el proceso. Véase U.S. v. Hopkins, *supra*; Cooper v. Campbell, *supra*; People of the State of New York v. Morales, *supra*; New Mexico v. Apodaca, *supra*; Vermont v. Roberge, *supra*.

Lo que resolvemos hoy es cónsono con Chapman v. California, 386 U.S. 18 (1967). Allí, el máximo foro judicial de Estados Unidos sostuvo que, para que un tribunal apelativo federal mantenga en vigor una sentencia de instancia en la cual se cometió un error constitucional, el foro apelativo debe estar convencido,

más allá de duda razonable, que dicho error constitucional no contribuyó a la convicción del acusado. *Íd.*, pág. 24. Véase, además, Fahy v. Connecticut, 375 U.S. 85 (1963).

Al aplicar la normativa anteriormente descrita, debemos primero, como cuestión de umbral, evaluar si la defensa objetó oportuna y específicamente, con el debido fundamento, la irregularidad en el proceso de juramentación. En el supuesto de que tal objeción se haya dado de forma oportuna y de manera fundamentada, el Tribunal deberá concluir, acorde con lo resuelto hoy, que tal error fue una violación al derecho constitucional de la persona acusada. El segundo paso analítico entonces será evaluar si, de no haberse cometido dicho error, el resultado hubiera sido el mismo. El quantum de prueba necesario para este último eslabón del análisis – si de no haberse cometido el error constitucional el resultado hubiera sido el mismo – será el de más allá de duda razonable, según lo dispuesto en la Regla 105 (b) de Evidencia y lo establecido en Chapman v. California, *supra*.

Nuestra decisión en el presente caso, sin embargo, no requiere que alcancemos el segundo paso del análisis, pues, como cuestión de umbral, es necesario determinar si hubo una objeción adecuada en el momento oportuno. En este caso no hubo tal objeción. Así, no procede revocar el veredicto emitido por el jurado porque la posible ausencia de juramentación de uno de sus miembros no fue objetada.

En conformidad con las Reglas de Evidencia y la mejor práctica litigiosa, lo que le correspondía a la defensa era objetar diligentemente de modo que el asunto se corrigiera en la sala de instancia o, en caso de que eso no sucediera, se preservara el planteamiento en el récord para la fase apelativa. Eso no ocurrió. Muy distinto hubiera sido nuestro análisis hoy si, luego de una objeción oportuna de la defensa al proceso de juramentación del jurado, el juez de instancia la hubiera ignorado y proseguido con el juicio. Una vez más, ese no es el caso ante nos.

Por último, la defensa reclama que hizo el planteamiento de la falla en la juramentación después del veredicto porque no se percató antes. No pasamos juicio sobre si lo anterior en efecto fue un desliz o una estrategia de litigación. Sin embargo, si se trató de una estrategia de litigación, las partes asumieron los riesgos que ello conlleva y no pueden ahora pedir un segundo turno al bate para relitigar algo que tuvieron ante sí en la fase del juicio. En el caso de que sea un desliz, como reclama la defensa, ello no cambia en forma alguna lo que aquí resolvemos, pues no se conservó en el récord un argumento que la defensa debió proteger para la fase actual.

III.

Por otra parte, la defensa argumenta que el foro primario erró al imponer sentencias mayores a las dispuestas por el término fijo consignado en la ley penal,

pues tomó en cuenta factores agravantes que no estuvieron ante la consideración del jurado que emitió su veredicto de culpabilidad. Lo anterior, sostuvo la defensa, está reñido con lo resuelto por el Tribunal Supremo federal en *Apprendi v. New Jersey*, *supra*, y por este Tribunal en *Pueblo v. Santana Vélez*, *supra*. En este aspecto, la defensa tiene razón.

La Procuradora General afirma, sin embargo, que no debemos evaluar este planteamiento pues la defensa lo presentó por primera vez cuando solicitó reconsideración al Tribunal de Apelaciones. Es decir, la Procuradora General indica que la defensa renunció a este argumento al no presentarlo ante el Tribunal de Primera Instancia ni durante su primera comparecencia ante el foro apelativo intermedio. La razón para ello, sin embargo, es que, en esos momentos procesales, no habíamos resuelto *Pueblo v. Santana Vélez*, *supra*, y, por ende, no estaba disponible ese planteamiento para la defensa. Al emitir nuestro dictamen el 13 de octubre de 2009, expresamos que, "por ser la norma que establecemos en este momento de carácter constitucional aplicable a los procesos penales, tiene efecto retroactivo a todos aquellos casos que no hayan advenido finales y firmes al día de hoy". *Íd*., pág. 78. Por lo anterior, no hay duda de que lo decidido en *Pueblo v. Santana Vélez*, *supra*, es de aplicación a la controversia ante nos. Veamos.

Tanto bajo el Código Penal de 1974 como el actual, el delito de asesinato en primer grado conlleva una pena de

99 años de cárcel. Asimismo, la violación del Art. 5.04 de la Ley de Armas, *supra*, acarrea, en la modalidad imputada a los peticionarios, una pena de cárcel fija de diez años. Si hubiese circunstancias atenuantes en la violación del Art. 5.04 de la Ley de Armas, la pena podría reducirse a cinco años, y si hubiese circunstancias agravantes podría subir a una reclusión carcelaria de 20 años. El Art. 5.07 de la Ley de Armas, por su parte, tiene una pena fija de 24 años de prisión. Las circunstancias atenuantes pueden reducir la pena a 18 años, aunque las agravantes pueden incrementarla a 36 años. Las penas carcelarias dispuestas en la Ley de Armas se impondrán de forma consecutiva a cualquier otra sentencia. Art. 7.03 de la Ley de Armas, 25 L.P.R.A. sec. 460(b). En este caso, las sentencias por la Ley de Armas se cumplirán de manera consecutiva – no concurrente – con los 99 años de prisión dispuestos para el asesinato en primer grado.

No obstante lo anterior, en el caso ante nos el juez de instancia impuso una sentencia de 204 años de cárcel a cada uno de los cinco peticionarios. El desglose de la sentencia se hace de la siguiente forma: 99 años por el asesinato en primer grado; 15 años por cada uno de los cinco cargos del Art. 5.04 de la Ley de Armas, para un total de 75 años en este renglón; y 30 años por el cargo del Art. 5.07 de la Ley de Armas.

Como se puede apreciar, la sentencia impuesta por el juez en cada una de las infracciones al Art. 5.04 de la Ley de Armas excedió, por cinco años en cada cargo, la

pena fija dispuesta en el estatuto. Del mismo modo, la pena en el cargo del Art. 5.07 de la Ley de Armas superó por seis años la pena fija establecida en ese estatuto.

De acuerdo con nuestra jurisprudencia y la del Tribunal Supremo federal, era al jurado – y únicamente al jurado – a quien le correspondía determinar, más allá de duda razonable, si había factores agravantes en la violación de los Arts. 5.04 y 5.07 de la Ley de Armas que ameritaran el incremento de la pena contemplada por el límite estatutario penal. Ese análisis por parte del jurado no se dio. Como bien señalamos en Pueblo v. Santana Vélez, *supra*, pág. 71, citando a Blakely v. Washington, 542 U.S. 296 (2004), "el límite estatutario es aquella pena máxima que el juez puede imponer con el solo veredicto de culpabilidad del jurado, sin la necesidad de determinar hechos adicionales". Al interpretar Apprendi v. New Jersey, *supra*, expusimos en Pueblo v. Santana Vélez, *supra*, pág. 71, que "cualquier hecho que agrave la pena de un acusado más allá del límite estatutario, salvo aquellos hechos relacionados con la reincidencia, debe ser determinado por un jurado más allá de duda razonable".

El límite estatutario penal era 10 años de prisión por cada violación al Art. 5.04 de la Ley de Armas, *supra*. Es decir, esa era la pena máxima que el juez podía imponer con el veredicto de culpabilidad del jurado sin determinar hechos adicionales. Así, el juez de instancia se excedió por cinco años en cada uno de los cinco cargos de violación al Art. 5.04 de la Ley de Armas. Como las

sentencias por violaciones a la Ley de Armas se imponen de manera consecutiva, el juez del Tribunal de Primera Instancia dictó un exceso de 25 años de pena por violaciones al Art. 5.04 del mencionado estatuto.

De igual manera, el Art. 5.07 de la Ley de Armas, *supra*, tiene una pena fija de 24 años de prisión. Las circunstancias agravantes pueden incrementar la pena a 36 años. El juez de instancia, tomando en cuenta factores agravantes que no fueron decididos por el jurado más allá de duda razonable, impuso una sentencia de 30 años, seis años por encima del límite estatutario que contempla el referido Art. 5.07 de la Ley de Armas. En total, los 25 años en exceso que dictó el juez por los cargos del Art. 5.04 de la Ley de Armas, y los seis años que impuso por encima del límite estatutario del Art. 5.07 de la Ley de Armas, hacen que la sentencia carcelaria actual contra los peticionarios sea 31 años mayor de lo que en derecho corresponde.

IV.

En resumen, resolvemos hoy que la falta de juramentación de un miembro del jurado es un error constitucional que puede provocar la nulidad de un juicio criminal. Sin embargo, para que un acusado pueda reclamar a nivel apelativo que se le violó ese derecho constitucional durante su juicio, debe hacer una objeción oportuna y fundamentada en el Tribunal de Primera Instancia. En este caso no hubo esa objeción oportuna y fundamentada y, por ende, validamos el veredicto de

culpabilidad emitido por el jurado contra los peticionarios. Asimismo, reiteramos la aplicabilidad retroactiva de Pueblo v. Santana Vélez, *supra*, a todo proceso penal que no haya advenido final y firme antes del día en que se emitió el dictamen, el 13 de octubre de 2009.

Por todo lo anterior, se modifica la sentencia del Tribunal de Apelaciones en cuanto a las penas carcelarias impuestas a los peticionarios. Se ordena la devolución del presente caso al Tribunal de Primera Instancia para que, de así solicitarlo el Ministerio Público, se celebre una vista para establecer las circunstancias agravantes ante un jurado y que estas sean probadas más allá de duda razonable. Tras ello, el juez del foro primario podrá imponer la sentencia con los agravantes probados. Por el contrario, si el Ministerio Fiscal no solicita la referida vista, procede que los peticionarios sean resentenciados al término fijo de las penas de los delitos por los cuales fueron convictos. Así, las sentencias de los convictos reflejarán lo dispuesto en esta Opinión y las exigencias explicadas en Apprendi v. New Jersey*, supra,* que adoptamos recientemente en esta jurisdicción en Pueblo v. Santana Vélez, *supra*. Asimismo, reiteramos que la disolución del jurado que encuentra culpable a un acusado por la convicción de un delito, no es impedimento para constituir otro jurado que juzgue los agravantes.

Por otra parte, resolvemos que es válido el veredicto de culpabilidad emitido por el jurado, a pesar de la

posible deficiencia en la juramentación de uno de sus integrantes, porque ese error constitucional no fue oportunamente objetado por la defensa y, de esa manera, se renunció a ese argumento en la fase apelativa.

Se dictará sentencia de conformidad.


                                    Federico Hernández Denton
                                         Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                        CC-2011-240

Miguel Bonilla Peña, *et al.*

    Peticionarios

SENTENCIA

San Juan, Puerto Rico, a 3 de noviembre de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se modifica la sentencia del Tribunal de Apelaciones en cuanto a las penas carcelarias impuestas a los peticionarios. Se ordena la devolución del presente caso al Tribunal de Primera Instancia para que, de así solicitarlo el Ministerio Público, se celebre una vista para establecer las circunstancias agravantes ante un jurado y que estas sean probadas más allá de duda razonable. Tras ello, el juez del foro primario podrá imponer la sentencia con los agravantes probados. Por el contrario, si el Ministerio Fiscal no solicita la referida vista, procede que los peticionarios sean resentenciados al término fijo de las penas de los delitos por los cuales fueron convictos. Así, las sentencias de los convictos reflejarán lo dispuesto en esta Opinión y las exigencias explicadas en Apprendi v. New Jersey, *supra,* que adoptamos recientemente en esta jurisdicción en Pueblo v. Santana Vélez, *supra*. Asimismo, reiteramos que la disolución del jurado que encuentra culpable a un acusado por la convicción de un delito, no es impedimento para constituir otro jurado que juzgue los agravantes.

Por otra parte, resolvemos que es válido el veredicto de culpabilidad emitido por el jurado, a pesar de la posible deficiencia en la juramentación de uno de sus integrantes, porque ese error constitucional no fue oportunamente objetado por la defensa y, de esa manera, se renunció a ese argumento en la fase apelativa.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta concurre con el resultado en este caso por entender que se incumplió crasamente con nuestro mandato en Pueblo v. Santana Vélez. Por ello, devolvería el caso al Tribunal de Primera Instancia a los únicos efectos de resentenciar a los peticionarios de acuerdo con las penas fijas establecidas por ley. La Juez Asociada señora Rodríguez Rodríguez concurre con el resultado sin opinión escrita. La Jueza Asociada señora Pabón Charneco no interviene.


Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo